INHABITANTS OF NEEDHAM *vs.* INHABITANTS OF WELLESLEY.

Norfolk.   Jan. 13, 14, 1884. — May 9, 1885.   FIELD, DEVENS, & COLBURN,
                           .                     JJ., absent.

The St. of 1881, *c.* 172, incorporating a part of the territory of a town into a new
    town, provided, in § 6, that "the annual excess, if any, of maintaining the pub-
    lic schools" in the part remaining after the division, over and above the ex-
    pense of maintaining the public schools in the new town, should be ascertained
    "on the basis of the average number of scholars in the public schools of legal
    school age" for the preceding year; and the new town should pay of such ex-
    cess in the proportion which its valuation, in the preceding year, bore to the
    valuation of the part remaining in the old town; and that the new town should
    pay to the old town "a sum of money, the annual interest of which, at five per
    cent, shall equal in amount the part of such excess." *Held*, that "the average
    number of scholars in the public schools" meant the average membership of
    the public schools, as shown by the school register, and not the average at-
    tendance. *Held, also*, that "of legal school age" included all members of the
    public schools under twenty-one years .of age. *Held, also*, that the grades of
    the schools in the two towns could not be taken into consideration. *Held, also*,
    that interest on the cost of the school-houses could not be included in estimating
    the expense of maintaining the schools for the preceding year. *Held, also*, that
    interest, on the amount the new town was to pay the old, did not begin to run
    until the final decree on a petition, provided for by the statute, for commission-
    ers to determine the amount to be paid.

PETITION, under the St. of 1881, *c.* 172, § 10, filed February
15, 1882, for the appointment of commissioners to hear the par-
ties, and determine certain differences between them, growing
out of the division of the town of Needham by said statute.

Commissioners were appointed, who heard the parties, and
made a report to this court.   Both parties moved to recommit
the report to the commissioners, with proper instructions.

The case was heard before *Devens*, J., who reserved it for the
consideration of the full court.   The facts appear in the opinion.

*F. D. Ely*, for the petitioner.

*J. G. Abbott*, for the respondent.

MORTON, C. J.   The act of the Legislature incorporating the
town of Wellesley provides that in case the towns of Needham
and Wellesley shall not agree in respect to the division of the
property or debts of the town of Needham, or in respect to the
amount of money, if any, to be paid by the town of Wellesley to
the town of Needham under the provisions of the sixth section
of the act, commissioners shall be appointed by this court to

determine the differences, whose decision, when accepted by the court, shall be final; but the court shall have power, for proper cause shown, to set aside said award, or to recommit it to the commissioners. St. 1881, *c.* 172, § 10.

Commissioners were duly appointed, who have made their report. Several objections have been made to it, which we proceed to consider, so far as they are now insisted upon.

Section 6 provides, among other things, that " the annual excess, if any, of maintaining the public schools, highways, and bridges in that part of the town of Needham remaining after the division of said town, as provided in this act, over and above the expense of maintaining the public schools, highways, and bridges in that part of Needham incorporated as the town of Wellesley, if not agreed upon by the selectmen of Needham and Wellesley, shall," so far as the schools are concerned, " be ascertained by the commissioners provided for in section ten of this act, on the basis of the average number of scholars in the public schools of legal school age for the year eighteen hundred and eighty; . . . . and the town of Wellesley shall pay of such excess in the proportion which the valuation, real and personal, in the year eighteen hundred and eighty, of the part of Needham hereby incorporated as the town of Wellesley, bore to the valuation, real and personal, of the remaining part of said town of Needham, and shall provide for, pay, and discharge the same as follows, to wit: the town of Wellesley shall pay to the town of Needham a sum of money, the annual interest of which, at five per cent, shall equal in amount the part of such excess to be paid by the town of Wellesley."

It seems to have been contemplated by the Legislature, that, by the division, the larger part of the taxable property of the town was included in Wellesley, while the larger part of the burden of maintaining the public schools was thrown upon Needham, and the object of this section was to provide an approximate compensation to Needham for this inequality of burdens.

The Legislature adopted as the rule for equalizing the burdens of expense for maintaining schools, that the excess which fell upon Needham should be ascertained " on the basis of the average number of scholars in the public schools of legal school age for the year eighteen hundred and eighty." The commissioners

ruled and held that by " the average number of scholars in the public schools " was meant the average " membership of the public schools, as shown by the school register." This was the correct construction of the statute. Scholars whose names are upon the register, and who are recognized as members of the schools, are scholars, though they may be occasionally ·absent from school. If the Legislature had intended to make the average attendance upon the schools the basis, it would have said so. The language used does not naturally bear ·this construction.

The commissioners also ruled that the phrase in the statute, " of legal school age," includes all the members of the schools under the age of twenty-one years. We are of opinion that this ruling was correct. The Pub. Sts. c. 47, § 4, provide that " all children within the Commonwealth may attend the public schools in the place in which they have their legal residence, subject to the regulations prescribed by law." Under this provision all the residents of the Commonwealth under the age of twenty-one years, as soon as they have sufficient capacity, are entitled to attend the public schools, subject to such lawful regulations as may be made ; and, by its natural meaning, the expression " scholars of legal school age " includes all those who are entitled to attend the public schools.

The respondent contends that it means scholars between the ages of eight and fourteen years. The statute upon which it relies provides that persons having the control of children between those ages may be compelled to send them to school for a certain portion of the year. Pub. Sts. c. 47, § 1. It does not fix the ages within which children may legally attend the public schools. It is, like the Pub. Sts. c. 48, in regard to children employed in manufacturing establishments, designed to compel the education of children, and not to fix a legal school age.

The same remark is true of the Pub. Sts. c. 43, upon which the respondent relies as establishing the legal school age as being between the ages of five and fifteen years. This statute provides for the distribution of one half of the income of the school fund among the cities and towns in proportion to the number of persons between five and fifteen years of age belonging to each. It is no part of its purpose to provide what shall be the legal school age.

We can see no rule of construction by which it can be held that scholars under the age of eight or over the age of fourteen years are not of legal school age. The expense of maintaining schools depends upon the number of scholars who attend, and not upon the number of those who are compelled to attend. The reason of the rule, and the ordinary meaning of the language used, both show that by " scholars of legal school age " the Legislature intended all scholars who were of the age which entitled them to attend school, and for whom the town was compelled to keep its schools open.

The commissioners rightly ruled that, in determining what was the excess of the cost of maintaining the schools in Needham, they could not take into account the grades of the different schools, or consider the fact that a larger proportion of the schools in Wellesley were of the grade of high schools, while a larger proportion of the schools in Needham were primary schools. The statute adopts an arbitrary rule, which was binding upon the commissioners. The excess was to be ascertained on the basis of the average number of scholars in the public schools, without regard to their grade. The commissioners had no right to depart from this basis, which probably the Legislature thought would work substantial justice between the two towns.

The commissioners rightly ruled that interest on the cost or value of the school-houses ought not to be included as part of the expense of maintaining the schools for the year 1880. By " the annual excess, if any, of maintaining the public schools, highways, and bridges," the Legislature undoubtedly meant the amount expended annually, and did not intend to include interest on the cost of school-houses, any more than interest on the cost of the highways and bridges.

The question raised before the justice who heard the case, as to the few children who attended school out of the town in which they resided, was not argued before us, and we do not consider it.

The only remaining question is as to the time at which interest, if any, should begin to run on the amount which, by the report, Wellesley is to pay to Needham. The statute makes no provision as to interest. It fixes no time when Wellesley shall

pay to Needham the amount to be paid by Wellesley. It contemplates that the parties may not agree upon this sum, and that some time may elapse before it can be fixed by the method it provides. It seems to us that Wellesley cannot be required to pay interest, as damages, until it is in default. It is not like the case of taking land for a public use, where the land is appraised at its value on the day it is taken, and the law regards it as the duty of the party taking to pay at the moment of taking, to take with one hand and pay with the other, and so allows interest for the detention of the money until it is paid. *Parks* v. *Boston*, 15 Pick. 198. *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313.

The sum to be paid by Wellesley is not in payment of the property of Needham taken by Wellesley; it is in the nature of indemnity for the inequality produced by the division of the old town. The liability is purely a statutory liability, the amount of which is to be ascertained in the manner fixed by the statute. Upon the whole, it seems to us that, until the amount is determined, the town of Wellesley cannot be said to be in any default, and therefore that it should not be charged with interest. It does not seem to us that the commencement of this petition can be regarded as a demand which puts the respondent town in default. The petition is one of the steps for ascertaining the amount. It might be brought by either party, and it did not change the rights of the parties in respect to interest.

The result is, that the petitioner is entitled to interest from the final decree in this court; and that, in all other respects, the report of the commissioners is to be accepted and affirmed.

*Judgment accordingly.*