RODERICK P. MURPHY & others *vs.* SCHOOL COMMITTEE
OF BRIMFIELD
(and two companion cases[1]).

Hampden. Plymouth. January 5, 1979. — May 7, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*School and School Committee*, Transportation. *Education.*

Where a school committee provided transportation for elementary
school students to a local facility and transported no elementary
school students to other towns, and provided transportation for
secondary school students to schools located outside the town but
within the regional district and transported no secondary school
students to schools located outside the regional district, the school
committee had no obligation under G. L. c. 76, § 1, to transport
elementary school students to private schools located outside the
town or to transport secondary school students to private schools
located outside the regional district. [41-42] HENNESSEY, C.J. dis-
senting.

Where a school committee provided transportation to regional high
school students to a regional high school and did not transport any
students to schools located outside the district, the school commit-
tee had no obligation under G. L. c. 76, § 1, to transport students to
a private school located outside the district. [42] HENNESSEY, C.J.,
dissenting.

Where a school committee provided transportation to elementary
school students to both public and private schools within the town
and transported no such students to schools located outside the
town the school committee had no obligation under G. L. c. 76, § 1,
to transport students to a private school located outside the town.
[42-43] HENNESSEY, C.J., dissenting.

[1] Michael J. Regan & others *vs.* Whitman-Hanson Regional School
Committee & others. Nancy Norberg & another *vs.* School Committee
of Scituate. In addition to the briefs submitted by the parties, we have
received a helpful brief from the Massachusetts Association of School
Committees, Inc., as amicus curiae.

CIVIL ACTION commenced in the Superior Court on December 31, 1975.

The case was heard by *Greaney, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

TWO CIVIL ACTIONS commenced in the Superior Court on December 1, 1976, and February 28, 1977, respectively.

Each case was heard by *Volterra, J.*, a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted requests for direct appellate review.

*Matthew R. McCann (James F. Cosgrove* with him) for the School Committee of Brimfield.

*Albert B. Cook* for Roderick P. Murphy & others.

*James A. Toomey & Mary W. Nelson* for the Whitman-Hanson Regional School Committee & others.

*Thomas F. Quinn* for Michael J. Regan & others.

*Austin Broadhurst & Wendell Robert Carr*, for the Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

*Edward R. Ryan*, Town Counsel, for the School Committee of Scituate.

*Francis B. J. Badger*, for Nancy Norberg & another, submitted a brief.

LIACOS, J. The school committees of Brimfield, the Whitman-Hanson Regional District, and Scituate furnish school transportation to resident students attending public schools. They have declined, however, to furnish transportation to resident students attending private schools which are located outside their school districts. Relying on G. L. c. 76, § 1, as amended through St. 1971, c. 875, the compulsory attendance law, several parents of the pupils denied transportation brought actions against their respective school committees. Finding that the public school students travelled at public expense over distances comparable to those travelled by the private

school students, each trial judge directed the school com-
mittee before him to provide the transportation request-
ed. The three committees have taken appeals, each of
which we have transferred here either on our own initia-
tive or at the request of one of the parties. Although the
cases were tried and appealed separately, we scheduled
oral argument of all three for the same day. Now we
consolidate them for decision. For the reasons set forth
below, we reverse.[2]

In each case, the judge made detailed findings of fact.
For the most part, these findings rested on the stipula-
tions of the respective parties. Indeed, only in the case
against the School Committee of Brimfield did the parties
introduce additional testimony. The record reveals that
these cases share several salient features. In each, the
defendant school committee has elected to provide resi-
dent public school students with school transportation. In
none was transportation furnished to pupils enrolled in
a regular day program located outside the town or school
district of their residence.[3] In each, the plaintiffs sought

---

[2] We note that no question is presented here as to the constitutional-
ity of G. L. c. 76, § 1. In the case of *Everson* v. *Board of Educ. of Ewing*,
330 U.S. 1 (1947), the Supreme Court held that the reimbursement of
parents of parochial school children for school transportation does not
violate the "no-establishment" clause of the First Amendment to the
United States Constitution. This court has not ruled on the precise
question whether the provision of school transportation to nonpublic
(nonsectarian and parochial) school students is constitutional under
the anti-aid provision of art. 18 of the Amendments to the Massa-
chusetts Constitution, superseded by art. 46, as amended by art. 103.
See Rep. A. G., Pub. Doc. No. 12, at 183 (1976). Cf. *Quinn* v. *School
Comm. of Plymouth*, 332 Mass. 410, 413 (1955) (when no personal or
property rights of the committee are involved, it cannot question the
constitutionality of the statute). We have noted that provision of bus-
ing is "distinct" from a textbook loan program. *Bloom* v. *School Comm.
of Springfield*, 376 Mass. 35, 47-48 (1978).

[3] Although there was evidence that the defendants transported
pupils enrolled in special needs (G. L. c. 71B, § 8), vocational (G. L.
c. 74, § 8A) and cosmetology programs outside their respective town or
school district, such evidence was considered irrelevant by the judges
as to whether the plaintiffs' children, who attended regular day pro-

transportation for their children to schools located out-
side the town or district of their residence. All their chil-
dren attended regular day programs offered at private
sectarian schools that have appropriate approval. See
G. L. c. 76, § 1. All travelled distances were comparable
to those travelled by their public school counterparts. In
each case there was evidence that the expected per pupil
cost of transporting the plaintiffs' children at public ex-
pense exceeded the per pupil cost expended in transport-
ing public school pupils.

General Laws c. 76, § 1, as amended through St. 1971,
c. 875, provides in part that "in order to protect children
from the hazards of traffic and promote their safety, cit-
ies and towns may appropriate money for conveying
pupils to and from any schools approved under this sec-
tion. Pupils who, in fulfillment of the compulsory attend-
ance requirements of this section, attend private schools
of elementary and high school grades so approved shall
be entitled to the same rights and privileges as to trans-
portation to and from school as are provided by law for
pupils of public schools and shall not be denied such
transportation because their attendance is in a school
which is conducted under religious auspices or includes
religious instruction in its curriculum, nor because pupils
of the public schools in a particular city or town are not
actually receiving such transportation."[4]

grams, were entitled to school transportation at public expense. See
*Quinn* v. *School Comm. of Plymouth,* 332 Mass. 410, 414 (1955). The
parties do not dispute this finding before us.

[4] Although most of the quoted language from c. 76 first appeared in
1950 (St. 1971, c. 875, added the last clause commencing with the word
"nor"), the Legislature had enacted substantially the same language
fourteen years earlier as an addition to G. L. c. 40, § 5 (2). Statute 1936,
c. 390, provided: "Pupils attending private schools of elementary and
high school grade . . . shall be entitled to the same rights and privileges
as to transportation to and from school as are provided herein for
pupils of public schools." The same Legislature that enacted St. 1950,
c. 400, repealed St. 1936, c. 390. St. 1950, c. 478. The apparent purpose
of the legislative maneuvers sheds no light on the issue confronting us

In *Quinn* v. *School Comm. of Plymouth*, 332 Mass. 410 (1955), the only case to date to construe this language,[5] this court determined "that by its enactment the Legislature intended to make available to children in private schools transportation to the same extent as a school committee within its statutory powers should make transportation available to children in public schools. . . . The question is not what the committee can be made to do. The requirement imposed is that there be no discrimination against private school children in what the committee in its discretion decides to do." *Id.* at 412. The trial judge in the Brimfield case determined that this language controlled the case before him. He further determined that rather than establish fixed standards for assessing transportation rights and privileges, *Quinn* suggested a case-by-case consideration of several factors among which are the relative home-to-school distance for public and private school students, geographical boundaries, the cost of private school transportation, and the presence or absence of safety considerations. Of these, relative distance appears to have been the determining factor in the judge's mind. He noted that "[i]f the distance involved is approximately the same as the distance public school pupils are being transported, then I think it matters not that town boundaries are crossed. If the per capita cost is not unduly excessive, then I find that distance and safety still control." On the basis of this interpretation of *Quinn* the judge ordered the School Committee of Brimfield to transport the plaintiffs' children to schools located out-

here. In 1947, ten citizens filed an initiative petition under art. 48 of the Amendments to the Massachusetts Constitution seeking the repeal of St. 1936, c. 390. See 32 Mass. L.Q. (No.3) 44 (1947). The requisite signatures were obtained and the Secretary of the Commonwealth transmitted the petition to the Legislature. 1950 House Doc. No. 2137. Rather than submit the issue to the electorate, the Legislature repealed the offensive clause, but essentially reenacted it as part of c. 76, § 1, thereby frustrating the initiative process.

[5] This court never construed St. 1936, c. 390. See note 4, *supra*.

side the region to which the town of Brimfield belonged,
even though it transported public school students in com-
parable programs only to schools located inside the re-
gion. The judge who heard both the Whitman-Hanson
and Scituate cases adopted the reasoning developed in
the Brimfield decision and applied it to reach similar
results.

It is not disputed that a town, through its school com-
mittee, generally has no obligation to provide school
transportation to any of its residents.[6] *Newcomb* v. *Rock-
port,* 183 Mass. 74, 79 (1903). See *Graves* v. *Fairhaven,* 338
Mass. 290, 292 (1959), and cases cited. Rather, this contro-
versy involves the scope of a school committee's obliga-
tion once it adopts a practice, as here, of providing some
school transportation. The same controversy faced this
court in *Quinn,* and therefore the judges below were right
to look to that case for guidance in resolving the current
disputes.

*Quinn* was heard on a petition for a writ of mandamus.
The petitioners were residents of the town of Plymouth
and the parents of children who attended private school
in either Plymouth or the adjoining town of Kingston.
Those children in grades one and two attended the Sacred
Heart School in Plymouth; those in grades three through
six attended the Sacred Heart School in Kingston. The
school committee of Plymouth generally furnished all
resident students with transportation to local schools.[7]

---

[6] There are, however, certain circumstances when school transpor-
tation is mandatory regardless of a school committee's practice. See,
e.g., G. L. c. 71, § 6 (student must attend high school in another town
because the town of residence, having less than 500 families or
householders, maintains no high school); G. L. c. 71, § 68 (distance
between a child's residence and the school he is entitled to attend
exceeds two miles). These mandatory provisions apply equally to pub-
lic and private school students. This was apparently true under
St. 1936, c. 390. See Rep. A.G., Pub. Doc. No. 12, at 37 (1936). In
light of St. 1971, c. 875, it is undoubtedly true under G. L. c. 76, § 1.
See Rep. A.G., Pub. Doc. No. 12, at 188 (1976).

[7] Elementary school students received transportation if the distance

The only public school students in regular day programs who received transportation to schools located outside town were four elementary school pupils living twenty or more miles from the center of Plymouth who attended a public school in Bourne. Based on these facts, the court fashioned the following order: "A peremptory writ of mandamus is to issue commanding the committee (1) to provide transportation to the Sacred Heart School in Plymouth for pupils in grades I and II to the extent that transportation is provided by the committee for pupils in grades I and II in the public schools in Plymouth; and (2) to provide transportation to the Sacred Heart School in Kingston for pupils in grades III through VI to the extent that transportation is provided by the committee for elementary school pupils in the public school in Bourne." *Quinn* v. *School Comm. of Plymouth*, 332 Mass. at 414. On the basis of this order, it appears that to assess a school committee's transportation obligation, one first examines what occurs inside the district, then turns to consider what occurs outside the district. In terms of the facts here, the holding of *Quinn* is that, apart from rights explicitly conferred by statute, see note 6, *supra*, private school students are entitled to receive transportation to schools located outside their district of residence only if, and to the extent that, public school students enrolled in comparable programs receive transportation to schools located outside their district of residence. See Rep. A. G., Pub. Doc. No. 12, at 183 (1976). Contrary to the decisions below then, district lines and not relative distance travelled are the primary consideration under the *Quinn* interpretation of c. 76, § 1.

Reviewing the relevant statutory provisions and considering the intervening years since the *Quinn* decision, we find no reason to depart from the interpretation of c. 76, § 1, rendered there. We acknowledge that c. 76,

between home and school exceeded one mile — secondary school students if the distance exceeded one and one-fourth miles.

§ 1, is silent on the significance of the district line to a school committee's transportation obligation. Chapter 76, § 1, must, however, be read in context with a town and its school committee's general educational obligations. Cities and towns are the fundamental geographical units charged with administering elementary and secondary education in the Commonwealth. Chapter 71, § 1, as amended, provides in part that "[e]very town shall maintain . . . a sufficient number of schools for the instruction of all children who may legally attend a public school therein." Chapter 71, § 68, as amended, provides that "[e]very town shall provide and maintain a sufficient number of schoolhouses, properly furnished and conveniently situated for the accommodation of all children therein entitled to attend the public schools." The Legislature has relieved towns from these obligations only if they are very small, G. L. c. 71, §§ 4 and 6, or if they join a regional district. G.L. c. 71, §§ 14-16I. Local responsibilities to provide transportation for educational purposes beyond the town or school district boundaries arise only when mandated by a specific statute, or when the school committee, in its legal discretion, so determines. It is therefore reasonable to conclude that, in the absence of language to the contrary in G. L. c. 76, § 1, the Legislature intended that the intradistrict obligations of towns and their school committees are separate and distinct from their extra district obligations.[8]

_____

[8] The plaintiffs in the case involving the Whitman-Hanson Regional School Committee contend that to limit the transportation benefits of c. 76, § 1, to those private school pupils attending schools located within the district of a school committee's jurisdiction would deny them equal protection of the laws. Like *Quinn*, however, our decision today does not interpret c. 76, § 1, as proscribing the provision of benefits to residents who attend private schools located outside the district. Rather we hold that the statute requires that such students receive transportation to the extent that public school students receive transportation to schools located outside the district. Moreover, we believe that our decision is in harmony with the equal protection

We acknowledge that the *Quinn* construction may work a special hardship on those children, like the plaintiffs', who reside in districts that contain no private schools. Even though the practice of the school committee may entitle such children to intradistrict school transportation, the absence of a suitably located private school prevents them from receiving the benefit of their entitlement. Such children must therefore bear the cost of there being no private school in the district. We are not persuaded, however, that this result should affect our analysis. First, there is no evidence that the Legislature ever sought to address this rather narrow problem. Second, a contrary construction merely shifts the cost of this fortuitous circumstance to the taxpayers residing in such districts. The arguments as to who should bear the cost of this special circumstance thus cut both ways on the merit of this court's interpretation of c. 76, § 1.

We further conclude, as did the judge in the Brimfield case, that St. 1971, c. 875, which provides that private school students shall not be denied transportation "because pupils of the public schools in a particular city or town are not actually receiving such transportation," does not constitute an attempt by the Legislature to overrule *Quinn*. Rather it addresses an issue not considered in *Quinn*, namely the extent to which private school students are eligible for transportation not because of a school committee's practice but because of explicit provisions of the General Laws. See note 6, *supra.*

As to the words "to the extent that," used in the *Quinn* opinion, the facts of the case reveal their meaning. The one apparent prerequisite to receiving transportation to intradistrict schools was that students live a certain minimum distance from school. See note 7, *supra.* The State

---

requirements of the Constitution. The plaintiffs in the Whitman-Hanson case concede that this is not a situation calling for strict scrutiny. Applying the less demanding standard, we conclude that the Legislature could rationally distinguish a school committee's intradistrict transportation obligations from its extra district obligations.

scheme of reimbursing transportation expenditures sug-
gests this criterion since "no transportation reimburse-
ment shall be made on account of any pupil who resides
less than one and one half miles from the school which he
attends, measured by a commonly travelled route." G. L.
c. 71, § 7A (a), as amended. On these facts then, private
school students attending school in Plymouth were enti-
tled to transportation at public expense to the extent they
lived one mile from school if elementary school students,
or one and one-fourth miles from school if secondary
school students. The prerequisites to receiving transpor-
tation to a school located outside Plymouth appear less
definite. Distance is involved but rather than minimum
distance, the criterion appears based on relative distance;
the distance between the public school in Bourne and the
homes of the four elementary school students apparently
was substantially less than the distance between the
nearest public school in Plymouth and the students'
homes. Like the criterion of minimum distance, this crite-
rion is suggested by a provision of the General Laws. See
G. L. c. 71, § 68, as amended.[9] On these facts then private
school students attending school in Kingston were enti-
tled to transportation to the extent that they satisfied the
same criteria apparently met by those students who re-
ceived transportation to Bourne, e.g., that the school at-
tended outside Plymouth was closer than the public
school they were entitled to attend in Plymouth.

In elaborating on the criteria apparently employed by
the School Committee of Plymouth and considered by the

_____

[9] General Laws c. 71, § 68, provides in part that if the distance
between a child's residence and the school he is entitled to attend
exceeds three miles, "and the distance between the child's residence
and a school in an adjoining town giving substantially equivalent
instruction is less than three miles, and the school committee declines
to pay for tuition in such nearer school, and for transportation in case
the distance thereto exceeds two miles, the department . . . may re-
quire the town of residence to pay for tuition in, and if necessary
provide for transportation for a part or for the whole of said distance
to, such nearer school."

*Quinn* court, we do not mean to suggest that such criteria are exclusive. It is enough to say that they were reasonable and rationally related to the purpose of school transportation, namely promoting the health and safety of school children. School committees are free to employ criteria that substantially increase the rights and privileges of private and public school students over what they were in *Quinn* or what they might appear to be here. We note, however, that such criteria should issue from the school committees when they adopt their transportation programs and not from the courts after a controversy has arisen.

We now apply the principles discussed above to the three cases before us. The plaintiffs in the case against the School Committee of Brimfield are residents of the town of Brimfield and parents of school age children who attend St. Mary's Elementary School or Marianhill Central Catholic High School. Both schools are private, sectarian institutions, located in Southbridge, two towns east of Brimfield. Brimfield furnishes transportation to its local elementary school and to the regional secondary school complex located in Sturbridge. The region consists of the towns of Sturbridge, Brookfield, Holland and Wales, which with Brimfield form a contiguous, geographical whole. Southbridge adjoins the regional district's eastern border.

The plaintiffs' children are entitled to transportation to Southbridge at public expense only to the same extent that public school students in comparable programs receive transportation to schools located outside Brimfield. Given that Brimfield transports elementary school students to a local facility and transports no elementary school students to towns outside Brimfield, the school committee has no statutory obligation to transport the plaintiffs' children to elementary school in Southbridge. The committee does transport secondary school students to schools located outside Brimfield but only to the extent that they attend schools located in the regional district.

Brimfield transports no secondary school students to schools located outside the regional district. The school committee therefore has no obligation to transport the plaintiffs' children to a secondary school in Southbridge.

The plaintiffs in the case against the Whitman-Hanson Regional School Committee include two residents of the town of Hanson and two residents of the town of Whitman. All are parents of children who attend the Cardinal Spellman High School, a private, sectarian institution located in Brockton, less than one and one-half miles from the Brockton-Whitman border.[10] The Whitman-Hanson Regional School District has exclusive jurisdiction over the education of resident senior high school pupils in regular day programs. The district maintains a senior high school located on the Hanson side of the Whitman-Hanson border and furnishes transportation to all regional high school pupils who reside at least one and one-half miles from the school. It does not transport any pupils in regular day programs to schools located outside the district. The Whitman-Hanson Regional School Committee consequently has no obligation to provide the plaintiffs' children with transportation to Brockton.

The plaintiffs in the case against the School Committee of Scituate are residents of the town of Scituate. The plaintiff minor child attends Notre Dame Academy, a private, parochial school located in Hingham.[11] The School Committee of Scituate has elected to provide transportation to public school pupils in grades one

---

[10] Because they were uncertain whether the obligations of c. 76, § 1, applied to regional school committees created under c. 71, §§ 14-16I, the parents also filed complaints against the members of the independent school committees of Whitman and Hanson. Neither committee maintains a high school or furnishes transportation to high school students in regular day programs. The judge dismissed these complaints. This ruling is not challenged before us.

[11] In their complaint, the plaintiffs named the school superintendent and members of the School Committee of Scituate as defendants. The judge, however, dismissed the complaint against the superintendent.

through six if the distance between home and school is in excess of three-fourths of a mile, and for those in grades seven through twelve if the distance is in excess of one and one-half miles. The committee also provides transportation for Scituate children attending the Montessori School, the one private school within Scituate.

Although some public school pupils cross town lines in the course of their bus ride — the Humarock section of Scituate is a peninsula accessible by land only by passage through the town of Marshfield — the school committee does not transport any student enrolled in a regular day program to a school located outside Scituate. The School Committee of Scituate therefore has no obligation to provide the plaintiff minor child with transportation to Hingham.

The judgments against the three school committees are hereby reversed, and the cases are remanded for proceedings consistent with this opinion.

*So ordered.*

HENNESSEY, C.J. (dissenting). I dissent. The statute, G. L. c. 76, § 1, provides in substance that, if a town through its school committee decides to provide transportation to public school pupils at public expense, then comparable privileges shall be given to private school pupils. The majority opinion holds that if no public school students are transported beyond town or district lines, then private school pupils in comparable programs are not entitled to such transportation. The statute says nothing about town or district lines, and I think that making them determinative factors is not consistent with the legislative intent to give comparable privileges to all. I agree with the trial judges in these cases that the basic factors to be considered, on a case-by-case basis, are distance and safety and relative cost per pupil. A town or district boundary line is an artificial and irrelevant fac-

tor, which is inconsistent with the legislative intent to equalize privileges among all pupils.