ATTORNEY GENERAL vs. SCHOOL COMMITTEE OF ESSEX.

Essex. May 3, 1982. — August 31, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, "Anti-aid" amendment, Use of public money or property, Education. *Education. Practice, Civil,* Standing. *School and School Committee*, Standing to challenge validity of statute.

General Laws c. 76, § 1, requiring that school committees provide to students attending private schools in fulfilment of compulsory attendance requirements the same rights and privileges as to transportation to and from school as are provided by law for pupils of public schools does not violate art. 46, § 2, as amended by art. 103 of the Amendments to the Massachusetts Constitution. [329-335]

General Laws c. 76, § 1, requiring that transportation be provided to private school pupils who are attending such schools in the fulfilment of compulsory attendance requirements, does not require that transportation be provided such private school pupils who have attained the age of sixteen years. [335-336]

Where a school committee in a town without its own high school provided transportation to public school students to a high school beyond its district, G. L. c. 71, § 68, read in conjunction with c. 76, § 1, required that any private school student must be transported to any approved private school that is the same distance as or closer than the public school he is entitled to attend. [336-338]

CIVIL ACTION commenced in the Superior Court Department on September 30, 1980.

The case was heard by *Adams*, J., and a question of law was reported by him to the Appeals Court. The Supreme Judicial Court ordered direct review on its own initiative.

*John F. Tierney* for the defendant.

*Maria I. Lopez*, Assistant Attorney General, for the plaintiff.

NOLAN, J. The Attorney General brought this action in the Superior Court for declaratory and injunctive relief to

enforce the provisions of G. L. c. 76, § 1, which requires the school committee of the town of Essex to provide to residents of Essex attending private school in fulfilment of compulsory attendance requirements the same rights and privileges as to transportation as are provided by law for residents attending public school.

The defendant answered claiming that, inter alia, that portion of G. L. c. 76, § 1, mandating private school transportation, as then amended through St. 1950, c. 400,[1] is unconstitutional pursuant to art. 46, § 2, as amended by art. 103 of the Amendments to the Massachusetts Constitution, known as the "anti-aid amendment."[2]

The Attorney General moved for summary judgment. Mass. R. Civ. P. 56, 365 Mass. 824 (1974). After a hearing,

---

[1] In pertinent part St. 1950, c. 400 states: "[I]n order to protect children from the hazards of traffic and promote their safety, cities and towns may appropriate money for conveying pupils to and from any schools approved under this section.

"Pupils who, in the fulfillment of the compulsory attendance requirements of this section, attend private schools of elementary and high school grades so approved shall be entitled to the same rights and privileges as to transportation to and from school as are provided by law for pupils of public schools and shall not be denied such transportation because their attendance is in a school which is conducted under religious auspices or includes religious instruction in its curriculum."

[2] Article 46, § 2, as amended by art. 103 of the Amendments to the Massachusetts Constitution states: "No grant, appropriation or use of public money or property or loan of credit shall be made or authorized by the Commonwealth or any political subdivision thereof for the purpose of founding, maintaining or aiding any infirmary, hospital, institution, primary or secondary school, or charitable or religious undertaking which is not publicly owned and under the exclusive control, order and supervision of public officers or public agents authorized by the Commonwealth or federal authority or both, except that appropriations may be made for the maintenance and support of the Soldiers' Home in Massachusetts and for free public libraries in any city or town and to carry out legal obligations, if any, already entered into; and no such grant, appropriation or use of public money or property or loan of public credit shall be made or authorized for the purpose of founding, maintaining or aiding any church, religious denomination or society. Nothing herein contained shall be construed to prevent the Commonwealth from making grants-in-aid to private higher educational institutions or to students or parents or guardians of students attending such institutions."

a Superior Court judge rendered partial summary judgment for the Attorney General. The judge ruled that the school committee must provide transportation to private school students under the age of sixteen years to the extent that it was provided to public school students. The judge also ruled that the school committee lacked standing to challenge the constitutionality of G. L. c. 76, § 1.

Both parties appealed and the judge reported to the Appeals Court the question of the meaning of the term "to the same extent that [transportation] is provided to [public school] students" as applied in his decision, and as discussed in *Quinn* v. *School Comm. of Plymouth*, 332 Mass. 410, 412 (1955), and *Murphy* v. *School Comm. of Brimfield*, 378 Mass. 31, 35 (1979). We conclude that the providing of transportation to private school students at public expense does not violate our anti-aid amendment.

1. *Facts.* The town of Essex does not have a public high school and, pursuant to G. L. c. 71, § 4, has been exempted from having one. As a consequence, those students who wish to attend public high school are provided transportation to the high school in Gloucester. Students attending private high schools, also outside Essex, have requested transportation to and from those schools. The school committee has not provided such transportation.

2. *Standing of the school committee to challenge the statute.* In general, the constitutionality of a statute may be litigated only by persons whose interests are affected. *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 794 (1975), and cases cited. This court has held that a school committee lacked standing to challenge G. L. c. 76, § 1, because no "personal or property rights of the committee [were] involved." *Quinn* v. *School Comm. of Plymouth*, 332 Mass. 410, 413 (1955). The court in *Quinn* cited *Assessors of Haverhill* v. *New England Tel. & Tel. Co.*, 332 Mass. 357, 362 (1955), as the authority for its holding on the issue of standing. In *Assessors of Haverhill*, quoting from *Horton* v. *Attorney Gen.*, 269 Mass. 503, 513 (1929), the court stated that it "'is a general principle that no

one can question in the courts the constitutionality of a
statute already enacted except one whose rights are im-
paired thereby.' . . . This rule extends to public officers
whose private rights are not involved. . . . In general, an
administrative officer cannot refuse to proceed in accord-
ance with statutes because he believes them to be unconsti-
tutional" (citations omitted). Assuming, without deciding,
that the defendant lacks standing, cf. *Trustees of Smith Col-
lege* v. *Assessors of Whately*, 385 Mass. 767, 771 & n.3
(1982), we shall consider the issues raised because the Attor-
ney General, who is the officer with standing to raise these
challenges, see G. L. c. 12, §§ 8, 8A-8M, is a party to this
action. The constitutional issues are important. They have
been fully argued and are likely to recur. Accordingly, we
shall deal with these issues.

3. *Constitutionality of the statutory scheme.* The issue,
then, is whether G. L. c. 76, § 1, requiring that school com-
mittees provide to students attending private schools in ful-
filment of compulsory attendance requirements "the same
rights and privileges as to transportation to and from school
as are provided by law for pupils of public schools" is viola-
tive of art. 46, § 2, which states, in pertinent part, that no
"grant, appropriation or use of public money or property or
loan of credit shall be made or authorized by the Common-
wealth or any political subdivision thereof for the purpose
of founding, maintaining or aiding any . . . primary or sec-
ondary school . . . which is not publicly owned and under
the exclusive control, order and supervision of public offi-
cers or public agents authorized by the Commonwealth or
federal authority or both."

We have recently addressed similar constitutional chal-
lenges to statutes. See, e.g., *Commonwealth* v. *School
Comm. of Springfield*, 382 Mass. 665 (1981), where we held
that disbursement, pursuant to St. 1972, c. 766, of public
funds to private schools for provision of special education
programs for children with special needs did not violate art.
46, § 2. See also *Colo* v. *Treasurer & Receiver Gen.*, 378
Mass. 550 (1979) (expenditure of public funds to provide

for chaplains for the Legislature not violative of art. 46, § 2); *Bloom* v. *School Comm. of Springfield,* 376 Mass. 35 (1978) (lending textbooks by a school committee to private school students is unconstitutional as a use of public property in maintaining or aiding private schools in violation of art. 46, § 2). The history and intent of the anti-aid amendment has been well stated in these decisions and we need not repeat such a discussion here.

In the most recent decision in which we examined a challenge under art. 46, § 2, we set forth three factors to consider and balance: "(1) whether the purpose of the challenged statute is to aid private schools; (2) whether the statute does in fact substantially aid such schools; and (3) whether the statute avoids the political and economic abuses which prompted the passage of art. 46." *Commonwealth* v. *School Comm. of Springfield, supra* at 675.

We turn to an examination of the constitutionality of G. L. c. 76, § 1, in light of these factors, noting, first, the heavy burden a party must meet to overcome the presumption that a statute is constitutional. *Id. Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.,* 380 Mass. 212, 215-216 (1980). All rational inferences are to be made in favor of the constitutionality of legislation. *Commonwealth* v. *King,* 374 Mass. 5, 15-16 (1977).

The criteria outlined above guide our analysis of the crucial question of whether the provision of transportation to students attending private schools is for the purpose of aiding those schools.

a. *Purpose test.* Statute 1950, c. 400, added the paragraph mandating transportation to private school pupils, and also stated that "in order to protect children from the hazards of traffic and promote their safety, cities and towns may appropriate money for conveying pupils to and from any schools." On its face, then, this statute is intended to benefit children, and not schools. We have recognized, however, that in determining the validity of a statute under art. 46, § 2, we must look beyond the statutory language in order to discern whether the Legislature was attempting to

circumvent the Constitution by the use of facially valid language. *Commonwealth* v. *School Comm. of Springfield, supra* at 676-677. *Bloom* v. *School Comm. of Springfield, supra* at 47.

We have said, however, that "the purpose of school transportation [is to promote] the health and safety of school children." *Murphy* v. *School Comm. of Brimfield,* 378 Mass. 31, 41 (1979). We accept that statement as a general principle, but that does not necessarily mean that the right to be transported at public expense was extended to private school children for only that reason.

We have previously determined that the statute authorizing the expenditure of public funds to pay for the education of certain special needs children in private schools was not enacted for "an illegitimate State purpose to aid private schools." *Commonwealth* v. *School Comm. of Springfield, supra* at 677. Several factors which we found persuasive in that case must be examined here.

We looked at the avowed purpose of the statute which was found to be, as in the instant case, consistent with our Constitution. We found that "private placements [pursuant to St. 1972, c. 766] are authorized only when the appropriate special education program . . . is not available within the public school system. Even more significantly, the statute does not permit the reimbursement of money which is spent for a child who unilaterally enrolls in a private school." *Id.* To a limited degree, this point distinguishes the instant case. Under c. 766, the Commonwealth provides education for those who choose to be educated in public schools but who cannot be because facilities are not available. Children who attend private schools generally choose to do so at the cost of forgoing public education. We emphasized in *Commonwealth* v. *School Comm. of Springfield, supra* at 677, that our determination that there was no hidden purpose to aid or maintain private schools, derived from the fact that c. 766 guaranteed education to those who sought public schooling. The school committee has demonstrated no hidden purpose to maintain private schools through transportation of students.

b. *Substantial aid test.* We have previously said that the "aid" to private schools prohibited by art. 46, § 2, must be more than minimal; it must amount to "substantial assistance" to be violative of the anti-aid amendment. *Id.* at 680.

The United States Supreme Court has held that a New Jersey statute which provides for the use of public funds to transport students to nonpublic schools is not violative of the First Amendment to the United States Constitution. *Everson* v. *Board of Educ.*, 330 U.S. 1 (1947). The First Amendment, as applied to the States through the Fourteenth Amendment, prohibits the States from making any law "respecting the establishment of religion, or prohibiting the free exercise thereof." Though our anti-aid amendment is more stringent than the establishment clause of the First Amendment,[3] the language of *Everson* is instructive for our present purposes. "The fact that a state law, passed to satisfy a public need, coincides with the personal desires of the individuals most directly affected is certainly an inadequate reason for us to say that a legislature has erroneously appraised the public need. It is true that this Court has, in rare instances, struck down state statutes on the ground that the purpose for which tax-raised funds were to be expended was not a public one. *Loan Association* v. *Topeka*, [87 U.S.] 20 Wall. 655 [1874]; *Parkersburg* v. *Brown*, 106 U.S. 487 [1882]; *Thompson* v. *Consolidated Gas Utilities Corp.*, 300 U.S. 55 [1937]. But the Court has also pointed out that this far-reaching authority must be exercised with the most extreme caution. *Green* v. *Frazier*, 253 U.S. 233, 240 [1920]. Otherwise, a state's power to legislate for the public welfare might be seriously curtailed, a power which is a primary reason for the existence of states. Changing local

---

[3] In *Opinion of the Justices*, 357 Mass. 836, 841-842 (1970), the Justices stated that, "the explicit language of art. 46, § 2, of the Amendments . . . is much more specific than that of the First Amendment," and remarked on the "emphatic and comprehensive prohibition . . . found in the later part of § 2." We note, further, that our anti-aid amendment, as distinguished from the First Amendment, "marks no difference between 'aids,' whether religious or secular." *Bloom* v. *School Comm. of Springfield*, 376 Mass. 35, 45 (1978).

conditions create new local problems which may lead a state's people and its local authorities to believe that laws authorizing new types of public services are necessary to promote the general well-being of the people." *Everson* v. *Board of Educ., supra* at 6-7.

In *Bloom* v. *School Comm. of Springfield, supra* at 47, we stated that "without now passing on the matter, we may note that provision of busing (G. L. c. 76, § 1) is distinct from a textbook program. It might be enough to say, as the Supreme Court did in *Everson*, that busing is simply a community safety measure like police and fire protection; but even when the question is inquired into more closely, it is seen that the 'aid' involved is quite remote: the pupil individually 'consumes' the bus ride entirely; busing has no role in the teaching function, the school's essential enterprise; no technique of circumvention is involved; and there is no 'entanglement' risk comparable to that involved in the selection of textbooks." We note our agreement with the judge who stated in his decision on the motion for summary judgment: "police and fire protection, much as the building and improving of public sidewalks and streets, are provided to the public generally and no question need be asked regarding whether the recipient is a private or public institution."

The issue, then, is whether the provision of transportation to private school students constitutes substantial aid to the private schools which they attend. Admittedly, the resolution of this issue requires the court to draw a line somewhere between what is patently aid to nonpublic schools in contravention of the anti-aid amendment, and what is a public safety measure which benefits the students primarily and the school only secondarily.

We believe that such aid is not entirely dissimilar from the provision for sewers, public ways, and fire and police protection which benefit school buildings equally with all buildings. Transportation to and from these schools is one of the normal health and welfare services from which all our citizens benefit and does "no more than provide a gen-

eral program to help parents get their children, regardless of their religion, safely and expeditiously to and from accredited schools." *Everson, supra* at 18.[4] The criteria outlined in *Commonwealth* v. *School Comm. of Springfield, supra*, require that we find that the aid amounts to "substantial assistance" before we hold it to be violative of art. 46, § 2. We conclude that the benefits which busing brings to the schools are not substantial aid to the schools but constitute aid which is "quite remote." *Bloom* v. *School Comm. of Springfield, supra* at 47.

c. *Political and economic abuse test.* We turn next to a consideration of the provision of such transportation in light of the history and purpose of art. 46, § 2. We have examined the history and purpose of the anti-aid amendment previously and need not repeat that discussion here. See *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 671-673, 682-683 (1981); *Bloom* v. *School Comm. of Springfield, supra* at 39-44. Briefly, the anti-aid amendment was adopted because of concern "about aid to sectarian institutions and, more generally, with halting the politically divisive and financially wasteful practice of direct aid to

---

[4] The following jurisdictions have upheld the transportation of children attending private schools: *Bowker* v. *Baker*, 73 Cal. App. 2d 653 (1946); *Snyder* v. *Newton*, 147 Conn. 374 (1960); *Board of Educ., School Dist. No. 142* v. *Bakalis*, 54 Ill. 2d 448 (1973); *Nichols* v. *Henry*, 301 Ky. 434 (1945); *Americans United, Inc. as Protestants & other Americans for Separation of Church and State* v. *Independent School Dist. No. 622*, 288 Minn. 196 (1970); *Honohan* v. *Holt*, 17 Ohio Misc. 57 (C.P. 1968); *Rhoades* v. *School Dist. of Abington Township*, 424 Pa. 202, appeal dismissed, 389 U.S. 11 (1967); *State ex rel. Hughes* v. *Board of Educ. of Kanawha*, 154 W. Va. 107 (1970), cert. denied, 403 U.S. 944 (1971).

The following jurisdictions have ruled against the transportation of children to private schools: *Matthews* v. *Quinton*, 362 P.2d 932 (Alas. 1961), appeal dismissed, 368 U.S. 517 (1962); *State* v. *Brown*, 36 Del. 181 (1934); *Spears* v. *Honda*, 51 Haw. 1 (1968); *Judd* v. *Board of Educ. of Union Free School Dist. No. 2 of Hempstead*, 278 N.Y. 200 (1938) (but not followed in *Board of Educ. of Cent. School Dist. No. 1* v. *Allen*, 27 App. Div. 2d 69 [1966], aff'd, 20 N.Y. 2d 109 [1967], aff'd, 392 U.S. 236 [1968]); *Board of Educ. for Independent School Dist. No. 52* v. *Antone*, 384 P.2d 911 (Okla. 1963); *Visser* v. *Nooksack Valley School Dist. No. 506*, 33 Wash. 2d 699 (1949).

private schools and institutions." *Commonwealth* v. *School Comm. of Springfield, supra* at 683. We also held that c. 766 provisions for disbursement of public funds to educate children with special needs in private schools and institutions do not violate our Constitution, finding critically important the fact that "c. 766, does not, in any way, support the on-going maintenance of private schools by lessening the financial burden of those who have elected a private school education." *Id.* The provision of transportation to those who elect to give up public education in order to attend private schools is not politically divisive and, in earmarking monies for such transportation and the expense of funds for public school education, is not financially wasteful. We conclude, therefore, that transportation "does not promote aid to sectarian institutions, and is neither politically divisive nor financially wasteful." *Id.*

d. *Conclusion.* Our examination of the above three factors leads us to hold that that portion of G. L. c. 76, § 1, guaranteeing that those attending private schools in fulfilment of the compulsory attendance requirements shall be entitled to transportation to the same extent as public school students, does not violate art. 46, § 2, of the Amendments to the Constitution of the Commonwealth.

4. *Age of students to which G. L. c. 71, § 1, applies.* The statute requires provision for transportation to private school pupils who are attending such schools "in the fulfillment of the compulsory attendance requirements of this section." G. L. c. 76, § 1. After reaching the age of sixteen years, a child is no longer required to attend school. St. 1965, c. 741.

We think that the language of the statute is clear and that no transportation need be provided private school pupils who have attained the age of sixteen years. If more liberality is desirable, it is open to the Legislature to amend this statute. The statute, however, provides that the board of education establish minimum and maximum ages and a certain number of days a year during which attendance at school is compulsory. It does not fix the ages through which

children may legally attend schools. See *Needham* v. *Wellesley*, 139 Mass. 372, 374 (1885). It is only to those pupils who are compelled to attend school, and who choose to attend private school, that the statute speaks.

5. *Extent of transportation to be provided.* The Attorney General argues that the school committee is required, pursuant to G. L. c. 71, § 68, to provide transportation to all students who live more than two miles from the school that they are entitled to attend. He contends, therefore, that G. L. c. 76, § 1, which provides that private school students "shall be entitled to the same rights and privileges as to transportation to and from school as are provided by law for pupils of public schools," requires that the school committee must satisfy the mandate of G. L. c. 71, § 68, as to private school pupils. We have recognized that G. L. c. 71, § 68, providing that school transportation is mandatory when the distance between a child's residence and the school he is entitled to attend exceeds two miles, applies "equally to public and private school students." *Murphy* v. *School Comm. of Brimfield*, 378 Mass. 31, 36 n.6 (1979). Further, we have said that this "is undoubtedly true under G. L. c. 76, § 1." *Id.* Therefore, a strict reading of the statutes involved might lead to the conclusion that any private school pupil under sixteen residing in Essex and living more than two miles from the private school he attends, must be provided with transportation.

Such a reading of the statutory language, however, leads to absurd consequences. Under the construction described above, a child living in Essex and attending private school in Boston, Worcester, Albany, or New York, would be entitled to transportation to and from his school every day.

We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable. We assume the Legislature intended to act reasonably. *VanDresser* v. *Firlings*, 305 Mass. 51, 53-54 (1940). Rather, when a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute. *Price* v. *Railway Express Agency, Inc.*, 322 Mass.

476, 484 (1948), and cases cited therein. Such intent may be derived in part from other statutes on the same subject. *Nichols* v. *Commissioner of Corps. & Taxation*, 314 Mass. 285, 291 (1943).

The provision of G. L. c. 76, § 1, extending transportation to private school students, was enacted in 1950, subsequent to the enactment of the relevant provision of G. L. c. 71, § 68, as appearing in St. 1934, c. 97, § 1. The thrust of § 1 is to afford private school students the same transportation as public school students. We cannot accept as a rational construction of the statutes involved that the Legislature, in providing that private school students should be transported "to the same extent," *Quinn* v. *School Comm. of Plymouth*, 332 Mass. 410, 412 (1955), as public school students, meant that private school students should be so transported wherever they choose. Rather, we read G. L. c. 71, § 68, in conjunction with G. L. c. 76, § 1, to mean that if the distance between a private school student's residence and the public school he is entitled to attend exceeds two miles, such child is to be afforded transportation to his private school up to the distance from his residence to the public school he is entitled to attend. Such a construction is consistent with reason and the statutory language. The pertinent part of G. L. c. 71, § 68, as amended by St. 1977, c. 158, states that "[e]very town shall provide and maintain a sufficient number of schoolhouses, properly furnished and conveniently situated for the accommodation of all children therein entitled to attend the public schools. If the distance between a child's residence and the school he is entitled to attend exceeds two miles," in certain circumstances the town may be required to furnish transportation. In construing a statute, words or phrases used in one part of a statute should be related and considered in light of their context. *Commonwealth* v. *Baker*, 368 Mass. 58, 68 (1975). *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974). We think that the second time the word "school" is used in § 68, it necessarily refers to "public schools" as used in the first sentence of § 68. That is the apparent intention of the Leg-

islature which later extended equal treatment to private school students in G. L. c. 76, § 1. Since we cannot accept the conclusion that transportation must be provided to private school students to wherever they choose to attend school, we hold that the statutes must be construed to place a measure of reasonableness on the transportation of private school students.

Such reasonableness is found in our construction of G. L. c. 76, § 1, as explicated in *Quinn, supra*. There, the court ordered that certain private school students be afforded transportation beyond the district in which they lived. The basis of the order was that certain public school students, who lived closer to an extra-district school than their district school, were afforded transportation to that school. Thus, the private school students were to be transported to a school outside their district only if such private schools were closer than the public school which they were entitled to attend in their district. See *Murphy* v. *School Comm. of Brimfield, supra*, for an explication of *Quinn*.

The rule in the instant case thus becomes clear. Since the public school students who reside in Essex are transported beyond their district, any private school student must be transported to any approved private school that is the same distance as or closer than the public school he is entitled to attend.[5]

The judgment of the Superior Court is affirmed. The case is remanded to the Superior Court for further proceedings consistent with our answer to the reported question.

*So ordered.*

---

[5] We acknowledge, as we did in *Murphy*, that if there are no private schools within the distances described herein, or if a particular school is beyond the distance which we hold a private school student must be transported, that student will not be afforded the benefits of transportation. Such a result, however much it may be a hardship to an individual, cannot affect our analysis. See *Murphy* v. *School Comm. of Brimfield*, 378 Mass. 31, 39 (1979).