## ALBERT H. BONFATTI, JR. *vs.* ZONING BOARD OF APPEALS OF HOLLISTON.

No. 98-P-769.

Middlesex. May 7, 1999. - October 1, 1999.

Present: PERRETTA, DREBEN, & SPINA, JJ.

*Zoning,* Cluster development, Frontage, Building permit, Appeal, Timeliness of appeal, Jurisdiction. *Jurisdiction,* Zoning. *Practice, Civil,* Zoning appeal.

Where a property owner did not for over a year file a complaint for judicial review of a decision of a planning board imposing conditions on a definitive subdivision plan, the appeal was not timely under G. L. c. 40A, § 17, and the Superior Court was without jurisdiction to entertain the action. [49-50]

CIVIL ACTION commenced in the Superior Court Department on November 29, 1996.

The case was heard by *Regina L. Quinlan,* J., on motions for summary judgment.

*Judith C. Cutler* for the defendant.

*William D. Sack* for the plaintiff.

SPINA, J. A Superior Court judge annulled a decision of the Holliston zoning board of appeals (zoning board) and ordered a building permit to issue in favor of Albert H. Bonfatti, Jr. The zoning board appealed, claiming for the first time that the Superior Court lacked jurisdiction to hear Bonfatti's complaint for judicial review under G. L. c. 40A, § 17. We reverse.

The material facts are not in dispute. In April, 1992, Bonfatti and his wife purchased a 14.36 acre parcel of land situated along the easterly side of Mellen Street and the southerly side of Winter Street, both public ways, in Holliston. In October, 1993, Bonfatti applied to the planning board for a special permit

for a cluster[1] development of the property and he submitted a definitive subdivision plan showing four lots: lot 1 contained 3.56 acres and had 90.38 feet of frontage on Winter Street; lot 2 had 2.929 acres and 90 feet of frontage on Winter Street; lot 3 had 4.721 acres with 115.45 feet of frontage on Winter Street, plus frontage of 5.18 feet on Mellen Street. The fourth lot was designated as open space, having 3.180 acres with no frontage on either street.

The property is located within the "Agricultural-Residential B Zoning District" of the town. Section IV-B of the Holliston zoning by-law in effect at the time required lots in that district to have a minimum area of 40,000 square feet and "continuous frontage" of 180 feet. Area and frontage requirements for cluster developments in the district were 25,000 square feet and eighty feet,[2] respectively, plus an average frontage[3] of 100 feet for "all lots [within the subdivision] on a public or private way."[4] The zoning by-law authorizes the planning board to determine "the number of permitted lots" in a cluster development.[5]

The planning board advised Bonfatti in June, 1995, that "[b]ased on a review of the Zoning By-Laws and past practices," frontage must be "continuous," and rejected Bonfatti's effort to include the 5.18 feet of frontage on Mellen Street in the calculation of total frontage. Consequently, while the

---

[1]Section V-H of the zoning by-law, "Special Permit for Cluster Development," provides that a landowner "may, in connection with the submission of a subdivision plan for approval under the subdivision control law, make application to the Planning Board for a Special Permit excepting his plan from the lot area and frontage requirements of Section IV of this by-law." See G. L. c. 40A, § 9, fifth par.

[2]The parties and the motion judge have mistakenly identified the minimum frontage for lots in a cluster development in the "Agricultural-Residential B" district as sixty feet. This is the minimum frontage for cluster development lots in either the "Agricultural-Residential A" or "Residential" districts. See section V-H(e) of the zoning by-law. However, given the result we reach, it is immaterial whether the minimum frontage requirement is sixty or eighty feet.

[3]In contrast to section IV-B, nowhere in section V-H does the word "continuous" appear in relation to frontage for lots in a cluster development. Moreover, section I-E of the by-law, captioned "Definitions," does not define frontage.

The by-law was amended in 1995 or 1996 (the record varies) to define "lot frontage" as "[a] continuous lot line abutting a Street, and across which there is legal, and physical access to the lot." The parties agree the amended by-law does not apply here.

[4]Section V-H(d) and (e).

[5]Section V-H(g).

three proposed building lots each satisfied the per lot minimum frontage requirement of eighty feet for a cluster development, they fell short of the 100 foot average frontage requirement by 4.17 feet. Accordingly, the planning board indicated it would approve the special permit for the cluster development on the condition that there be only two buildable lots, and gave Bonfatti the option of selecting which lot would be designated not buildable. Bonfatti submitted a definitive subdivision plan which contained the notation that lot 1 was "not a building lot."

In November, 1995, the planning board granted the special permit for the cluster development and approved Bonfatti's definitive plan. See G. L. c. 41, § 81U. Bonfatti did not appeal the planning board's decision, and appears to have acceded to it. He has not sought a variance for lot 1, which the planning board had informed him was an option.

In May, 1996, Bonfatti applied to the building inspector for a building permit for lot 1. In July, 1996, the building inspector, who had been involved with Bonfatti's application for the special permit for the cluster development, denied the application, citing the lack of continuous frontage to satisfy the 100 foot average frontage requirement for cluster developments. Bonfatti appealed that decision to the zoning board pursuant to G. L. c. 40A, § 8, claiming that the building inspector improperly excluded the 5.18 feet of frontage on Mellen Street from his average frontage calculations. In November, 1996, after a public hearing, the zoning board affirmed the decision of the building inspector, reasoning that frontage was defined as "legal and physical access and egress" and that continuous frontage was implicitly required by the cluster development section of the zoning by-law. Bonfatti sought judicial review pursuant to G. L. c. 40A, § 17. The parties filed cross motions for summary judgment. After hearing, a judge of the Superior Court allowed Bonfatti's motion, denied the zoning board's motion, and ordered the building inspector to issue Bonfatti a building permit.

On appeal, the zoning board asserts that Bonfatti's complaint should have been dismissed for lack of jurisdiction. His appeal from the building inspector's denial of a permit, the board argues, was in actuality a belated appeal from the planning board's determination that lot 1 was not a building lot due to the lack of sufficient "continuous" frontage and the planning board's subsequent grant of the special permit for a cluster

development on the condition that lot 1 would be designated "not a building lot." The zoning board never presented this argument to the Superior Court judge.[6] Nevertheless, "[i]t is our duty to note and decide a jurisdictional question, 'regardless of the point at which it is first raised,' and whether any party has raised it." *Karbowski* v. *Bradgate Assocs., Inc.*, 25 Mass. App. Ct. 526, 527 (1988), quoting from *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 670 (1984), quoting from *Litton Bus. Sys.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981). See *General Acc. Ins. Co. of America* v. *Bank of New England-West, N.A.*, 403 Mass. 473, 474 (1988) ("subject matter jurisdiction may be challenged at any stage of a proceeding"). Contrast *Worcester County Christian Communications, Inc.* v. *Board of Appeals of Spencer*, 22 Mass. App. Ct. 83, 85-86 (1986), citing with approval *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 402-403 (1985) (building inspector's failure to respond in writing to a zoning enforcement request, although statutorily required, was an insignificant jurisdictional defect not necessitating sua sponte judicial attention).

Bonfatti chose not to appeal the condition attached by the planning board, and instead sought a building permit. When the building inspector denied the permit, at least four grounds for that denial were provided.[7] Bonfatti chose to appeal the building inspector's denial on only one of those grounds: the lack of sufficient continuous frontage to satisfy the average frontage requirement for three building lots. The symmetry of issues between the decision of the planning board and that of the building inspector leads this court to the conclusion that, "[h]owever the plaintiff characterizes them, his contentions to the [zoning board], to the motion judge, and to this court are in essence that the . . . condition [that lot 1 could not be a building lot] was invalid when originally imposed [by the planning board]." *Klein* v. *Planning Bd. of Wrentham*, 31 Mass. App. Ct. 777, 780 (1992). This is particularly so because section V-H of the zoning by-law authorizes the planning board to determine "the number of permitted lots" in a cluster development. Bonfatti has attempted to avoid the statutorily established avenue for review by asking the building inspector to overrule the planning board's prior decision.

---

[6]The zoning board was represented by different counsel on appeal.

[7]Since the building inspector's decision is not part of the record, we glean these facts from the zoning board's decision, which states that Bonfatti appealed the building inspector's July 17, 1996, decision "for reason #4."

Properly construed as an appeal from the planning board's November, 1995, decision to approve the definitive plan on the condition that lot 1 was not a building lot, Bonfatti's complaint for judicial review, filed a year after the planning board's decision, was untimely. General Laws c. 40A, § 17, requires that such an action be filed within twenty days from the day the decision is filed with the town clerk. *Iodice* v. *Newton*, 397 Mass. 329, 333 (1986) ("by its plain language, § 17 establishes that a person aggrieved by a decision of a special permit granting authority must seek review of that decision, if at all, within twenty days of the filing of the decision in question"). Because the appeal was filed well beyond the twenty-day limit, "the Superior Court judge was therefore without jurisdiction to entertain the appeal. . . . Timely commencement of the appeal in the Superior Court is a condition of maintaining it, 'a condition sine qua non,' and is a requirement this court has 'policed in the strongest way.' " *Cappuccio* v. *Zoning Bd. of Appeals of Spencer*, 398 Mass. 304, 311-312 (1986) (citations omitted). See *Iodice* v. *Newton*, 397 Mass. at 333 (where the appeal was filed after the twenty-day period had expired, "the Superior Court is without jurisdiction to entertain the action, . . . and it must be dismissed" [citation omitted]). Cf. *Planning Bd. of Marshfield* v. *Zoning Bd. of Appeals of Pembroke*, 427 Mass. 699, 703 (1998) (dismissal proper remedy where court lacked subject matter jurisdiction due to appellant's lack of standing). "Having failed to take a timely appeal from the [planning] board's action in granting the special permit with conditions, . . . the plaintiff did not have the right to challenge the validity of . . . the condition[] in a proceeding which, regardless of its form, was the equivalent of an appeal." *Klein* v. *Planning Bd. of Wrentham*, 31 Mass. App. Ct. at 778.

The judgment of the Superior Court granting Bonfatti's motion for summary judgment is vacated, and the case is remanded to the Superior Court for entry of a judgment dismissing the complaint.

*So ordered.*