Gershengorn, J.
Plaintiffs, Francis and Mary Sutula, have filed the present appeal under G.L.c. 40A, §17 from the decision of defendant, the Board of Zoning Appeal of the City of Cambridge (“the Board"), denying plaintiffs’ appeal from the refusal of the Commissioner of the Inspectional Services Department (the “Commissioner”) to stop construction under a building permit issued to defendants, Malcolm and Susan Rogers (the “Rogers”). Defendants, the City of Cambridge and the Rogers, now move to dismiss plaintiffs’ complaint on the ground that plaintiffs’ present appeal is actually an appeal of the Board’s allowance of a variance to the Rogers and not, as the plaintiffs purport, an appeal from the Commissioner’s refusal to issue a stop work order. Therefore, defendants contend, the plaintiffs’ appeal must be dis *200 missed since they failed to file it within twenty days of the Board’s granting of the variance as required under G.L.c. 40A, §17. For the following reasons, defendants’ motions to dismiss are allowed.
BACKGROUND
The following facts are taken from plaintiffs’ complaint and are assumed to be true for purposes of this motion. The plaintiffs jointly own property at 9 Concord Avenue in Cambridge, Massachusetts, which abuts the Rogers’ property located at 7 Concord Avenue. The Rogers applied to the Board for a variance to construct an enclosed “breezeway,” connecting the garage to the kitchen, and a deck over the garage, which is on the north side of the Rogers’ house abutting plaintiffs’ property. The Rogers also filed a Dimensional Form with their application for a variance, showing the distance their house is set back from the lot lines and the ratio of the total floor area to the lot size.
In early fall, 1997, Malcolm Rogers (“Mr. Rogers”) showed plaintiffs an elevation drawing of his proposed additions, which included a new deck with a three foot high railing on top of the garage and five new windows in the garage. The Rogers’ proposal also included a new 140 square foot structure with a sloping, shingled roof and no skylights. This structure ran from the end of the garage to the existing side door of the Rogers’ house, was lower in height than the garage, and was recessed from the outside edge of the garage. Plaintiffs immediately objected to the deck, which would have created a habitable space on the roof of the Rogers’ garage within two feet of plaintiffs’ property, thus intruding on plaintiffs’ privacy. Subsequently, Mr. Rogers informed Francis Sutula (“Dr. Sutula”) that he had eliminated the roof deck and the windows in the garage and that the proposal would remain the same as that on the elevation drawing in all other respects. Mr. Rogers also told plaintiffs that they need not attend the hearing on the variance and that their presence may in fact be considered an “unneighborly” act.
The Board held a hearing on the Rogers’ application for a variance on May 14, 1998. Plaintiffs did not attend. The Board members present at the hearing were Lauren Curry, Michael Wiggins, Charles Pierce, Arch Horst and Laura Kershner. Several members of the Board expressed their reluctance to grant a variance which would allow a structure to extend so close to an abutters’ property line in further violation of the set back requirements and the maximum ratio of total floor area to lot size. The Board members refused to grant the Rogers a variance unless they obtained written consent from plaintiffs, and, thus, continued the hearing until June 4, 1998.
Mr. Rogers subsequently requested that plaintiffs sign a letter to the Board stating their agreement with his proposed addition as shown on the elevation drawing, with the deck and garage windows eliminated. He did not inform plaintiffs that the hearing was continued in order to allow him time to obtain their written consent, but indicated that the letter was needed merely to clear up “loose ends.” Plaintiffs expressed their reluctance to sign such a letter. Mr. Rogers soon thereafter again went to plaintiffs’ house with another letter for them to sign. Dr. Sutula was not there. Mr. Rogers reiterated to Mary Sutula (“Mrs. Sutula”) that the plans were the same as previously shown to her, without the deck and windows in the garage. Mrs. Sutula signed the letter prepared by Mr. Rogers. That letter did not reference any plans.
At the June 4th hearing, held by the same five Board members as the May 14th hearing, the Rogers’ architect submitted to the Board the letter signed by Mrs. Sutula. The Board then granted the Rogers a variance (“the Board’s Variance Decision”). The Commissioner subsequently issued a building permit pursuant to the variance granted by the Board.
In early September 1998, plaintiffs observed that the addition being constructed on the Rogers’ property was not in accordance with the elevation drawing shown to them, which omitted the deck and garage windows. The addition was not recessed, was within two feet of plaintiffs’ property, did not have a sloping roof with shingles, but a flat roof with four skylights, and extended past the existing door of the Rogers’ house. Plaintiffs complained to the Rogers about this “wall” being constructed. Receiving no satisfaction from the Rogers, plaintiffs, by letter dated September 29, 1998, complained to the Commissioner and requested that he issue a stop work order on the Rogers’ construction on the grounds that the addition violated the Zoning Ordinance. Plaintiffs alleged that the variance granted by the Board, if it allowed construction of the “wall-like” structure, was obtained by the Rogers through unlawful means, including his deception of the plaintiffs in obtaining Mrs. Sutula’s consent to the proposal. On September 30, 1998, the Commissioner, via letter, denied plaintiffs’ request on the ground that the building permit had been issued pursuant to the variance granted by the Board (“the Commissioner’s Denial”).
Plaintiff appealed the Commissioner’s Denial to the Board on October 23, 1998. At the hearing on December 17, 1998, Board members John O’Connell, Thomas Sieniewicz, Theodore Hartry, Arch Horst and Laura Kershner were present. Plaintiffs contended that the Rogers obtained their variance through fraudulent and deceitful means, including misrepresentations made to plaintiffs in order to obtain Mrs. Sutula’s written consent and misrepresentations to the Board regarding the dimensions of the existing house. The Board, however, denied plaintiffs’ appeal on the ground that “as long as the plan which the Board approved is the plan upon which the Building Permit was issued, the Board can not [sic] overturn the issuance of the Building Permit.” (“Building Permit *201 Decision.”) The Board filed its Building Permit Decision with the City Clerk on January 14, 1999.
Plaintiffs instituted the instant action on February 3, 1999, alleging that (1) the variance granted by the Board to the Rogers is null and void because the Rogers failed to show, and the Board did not find, that the hardship requirements for a variance as provided in G.L.c. 40A, §10 and Cambridge Zoning Ordinance §10.31 were met and the Board’s Building Permit Decision, based solely on the ground that the building permit was issued pursuant to an unlawful variance, was arbitrary, capricious, and an abuse of discretion (Count I); (2) the variance is null and void because the Board failed to make a detailed record of its proceedings on the Rogers’ application for a variance setting forth clearly the reasons for its decision as required by G.L.c. 40A, §15 (Count II); (3) the Board’s Building Permit Decision was procedurally improper as the Board members who voted to grant the variance were not all present at the hearing on plaintiffs’ appeal from the Commissioner’s Denial (Count III); (4) the Board’s allowance of a variance was tainted with fraud and is null and void because the Rogers’ architect supplied misinformation, specifically the Dimensional Form submitted by the Rogers with their application for a variance was inaccurate in that the architect improperly utilized certain yards in his calculation of the “usable open space” when, in fact, the actual “usable open space” was less than the minimum required and the existing total gross floor area was greater than that stated.
DISCUSSION
Here, defendants challenge plaintiffs’ complaint under Mass.R.Civ.P. 12(b)(1) and (6). When evaluating the sufficiency of a complaint pursuant to Rule 12(b)(1) or (6), the Court must accept as true the well-pleaded factual allegations of the complaint, as well as any reasonable inferences which can be drawn therefrom in the plaintiffs favor. Ginther v. Comm’r of Insurance 427 Mass. 319, 322 (1998), citing Nader v. Citron, 372 Mass. 96, 98 (1977). Under Rule 12(b)(6), the “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader, 372 Mass. at 98, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All inferences should be drawn in the plaintiffs favor, and the complaint “is to be construed so as to do substantial justice . . .” Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991).
I. Counts I, II and IV
General Laws c. 40A, § 17 provides, in relevant part, that “(a]ny person aggrieved by a decision of the board of appeals . . . whether or not previously a party to the proceeding, . . . may appeal to the . . . superior court department in which the land concerned is situated ... by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk ...” The Superior Court is, therefore, without jurisdiction to hear such an appeal if the plaintiff failed to bring the action within 20 days of the board of appeals’ decision. O’Blenes v. Zoning Bd. of Appeals of Lynn, 397 Mass. 555, 558 (1986).
Here, the parties do not dispute that plaintiffs failed to file the instant appeal within 20 days of the Board’s Variance Decision as required by §17, but succeeded in instituting this appeal within 20 days of the Board’s January 14, 1999 filing of its Building Permit Decision with the Cambridge City clerk. Defendants, however, argue that Counts I, II and IV of plaintiffs’ complaint must be dismissed on the ground that they were not filed within 20 days of the Board’s Variance Decision. Specifically, defendants contend that, although plaintiffs, through their causes of action, purport to challenge the Board’s Building Permit Decision, they are in fact appealing the Board’s Variance Decision. Plaintiffs respond that it is the Board’s Building Permit Decision, and not the Board’s Variance Decision, from which they now appeal; and, therefore, since the instant appeal was filed within 20 days of the Board’s Building Permit Decision, the Superior Court has jurisdiction over their complaint and the Rogers’ motion to dismiss must be denied.
The first part of Count I and Count IV refer solely to the Board’s Variance Decision and the reasons why the variance is null and void. The first part of Count I challenges the failure of the Rogers to show, and the Board to find, that “literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship ... to the [Rogers] . . G.L.c. 40A, §10. Count IV similarly attacks the validity of the variance, specifically the Board’s reliance on the Dimensional Form completed by the Rogers’ architect which plaintiffs allege contained misinformation. Those challenges of the variance are clearly appeals from the Board’s Variance Decision and are, thus, dismissed since they were untimely filed, more than 20 days after the Board’s Variance Decision. G.L.c. 40A, §17.
The second part of Count I and Count II purport to attack the Board’s Building Permit Decision, but in fact are, at their essence, appeals of the Board’s Variance Decision.[2] The second part of Count I alleges that the Board’s Building Permit Decision, based solely on the ground that the building permit was issued pursuant to an unlawful variance, was arbitrary, capricious, and an abuse of discretion. Plaintiffs had the opportunity to challenge the lawfulness of the variance within 20 days of the Board’s Variance Decision. G.L.c. 40A, §17. If a plaintiff need only allege, in an appeal of the Commissioner’s decision based on the variance, that the variance was unlawful for reasons which could have been addressed in an appeal of the grant of the underlying variance to maintain such an action, the time requirement of § 17 would be rendered meaningless. In enacting §17, “the Legislature intended that affected parties should be able to rely on *202 the decisions of boards of appeals . . . which have not been challenged within a limited period.” Iodice v. Newton, 397 Mass. 329, 334 (1986).
Any argument by plaintiffs that they were unaware of the Rogers’ misrepresentations until after the 20 day period for appeal had elapsed and, thus, can only now address such issues on an appeal of the Board’s Building Permit Decision does not alter the essence of their causes of actions, which are appeals of the underlying variance. Plaintiffs are basically asking the Court to overturn the prior decision of the Board to allow the Rogers a variance by attacking the Board’s Building Permit Decision, which held that as long as the permit was issued in accordance with the variance, the Board cannot overturn the Commissioner’s Denial. See Bonfatti v. Zoning Bd. of Appeals of Holliston, 48 Mass.App.Ct. 46, 49 (1999) (plaintiff “has attempted to avoid the statutorily established avenue for review by asking the building inspector to overrule the planning board’s prior decision”). There is no argument that the permit was not issued in accordance with the variance. Nor is there an argument that the dimensions listed on the Dimensional Form filed with the Rogers’ application for a variance were not the dimensions upon which the Board relied in approving the variance, The present appeal is thus not the appropriate method to address plaintiffs’ claims of misrepresentations by the Rogers.[3]
Count II claims that the variance is null and void because the Board failed to set forth clearly the reasons for its Building Permit Decision as required by G.L.c. 40A, §15.[4] However artfully phased, this count, at bottom, is nothing more than a challenge of the Board’s Variance Decision. See id. (“[h]owever the plaintiff characterizes them, his contentions to the [zoning board], to the motion judge, and to this court are in essence that the . . . condition [attendant to the grant of the permit] was invalid when originally imposed [by the planning board]”), quoting Klein v. Planning Bd. of Wrentham, 31 Mass.App.Ct. 777, 780 (1992). See also Iodice, 397 Mass. at 334 (holding that, although plaintiff purports to challenge the validity of a statute and an ordinance, plaintiff is actually challenging the board’s decision to grant a permit subject to certain conditions provided for in the statute and ordinance). Accordingly, since plaintiffs filed the instant appeal more than 20 days after the Board’s Variance Decision, the second part of Count I and Count II must also be dismissed. G.L.c. 40A, §17.
Plaintiffs’ reliance on York Ford, Inc. v. Bldg. Inspector & Zoning Administrator of Saugus, 38 Mass.App.Ct. 938 (1995), and Vokes v. Avery W. Lovell, Inc., 18 Mass.App.Ct. 471 (1984), is misplaced. In York Ford, Inc., the plaintiff had applied for a special permit which was denied by the Board of Zoning and Building Appeals of Saugus on two grounds, one being that the plaintiffs present use of a particular lot was illegal. YorkFord, Inc., 38 Mass.App.Ct. at 938. Subsequently, when plaintiff continued its illegal use of the lot, the building inspector ordered plaintiff to cease such violations. Id. Plaintiff appealed the building inspector’s order. Id. In York, in contrast to the case at bar, the building inspector’s denial was not based on the Board’s underlying denial of the special permit; instead it was based on the subsequent illegal actions of the plaintiff, and, thus, the Court had jurisdiction to hear plaintiffs appeal. Id. at 939-40.
Similarly, Vokes is distinguishable from the instant case. In Vokes, defendant had obtained a variance in 1965, permitting it to operate its cesspool business from its premises located in a residential district and to build a garage to store its equipment on said premises (Garage #1). Vokes, 18 Mass.App.Ct. at 472. Thereafter, the town of Duxbury adopted a new zoning by-law, which caused defendant’s operations to become a nonconforming use. Id. at 472-73. Defendant inquired of the board of appeals whether it would need a special permit to construct a second garage on its property, and the board issued a memorandum to the building inspector stating that a special permit was unnecessary. Id. at 473. The plaintiffs then complained, via letter, to the building inspector regarding certain trucks being parked on defendant’s property. Subsequently, the building inspector issued a building permit to defendant to construct a second garage (Garage #2). Plaintiffs did not appeal the issuance of the building permit. Id. Plaintiffs thereafter requested the building inspector to issue a stop order preventing defendant from operating and maintaining certain trucks on its property and a stop order on the building permit. The building inspector ultimately denied plaintiffs’ requests. Id. at 474. It is this denial that the plaintiffs were deemed to have timely appealed to the board of appeals and then to the superior court. Id. at 480-83.
The plaintiffs in Vokes appealed the building permit which allowed defendant to build Garage #2. There was no variance or special permit addressing Garage #2. The only variance noted in Vokes was the 1965 variance permitting defendant to operate its business and to construct Garage #1. Id. at 472. Vokes is therefore inapplicable to the case at bar as the plaintiffs in Vokes were not attacking the validity of the variance, which permitted defendant to operate its business and construct Garage #1, but were instead challenging the building permit, which allowed defendant to build Garage #2 and which was not based on any grant of a variance or special permit. The building of Garage #2 was illegal, and the Court ruled that defendant could not protect such illegal activity from attack by hiding behind a building permit. Id. at 483.
In contrast, plaintiffs in the instant case seek to attack construction that is not illegal as the Board granted a variance for such construction from which plaintiffs failed to appeal. The Commissioner, unlike the inspector in Vokes, issued the building permit *203 based on a variance. Thus, however characterized, plaintiffs are challenging the variance. See Klein, 31 Mass.App.Ct. at 780.
II. Count III
Count III alleges that the members of the Board who heard and voted on the Rogers’ application for a variance were not the same members who heard and voted on plaintiffs’ appeal from the Commissioner’s Denial. Specifically, Lauren Curry, Michael Wiggins, Charles Pierce, Arch Horst and Laura Kershner presided over the hearing and voted on the Rogers request for a variance; whereas John O’Connell, Thomas Sieniewicz, Theodore Hartry, Arch Horst and Laura Kershner were present at the hearing and voted on the Commissioner’s Denial.
Plaintiffs fail to cite any law, either statutory or common law, which requires the same Board members who hear and vote on a variance to hear and vote on an appeal of the Commissioner’s refusal to stop construction permitted by that variance. It is true that the Board members who vote on a variance (or special permit) must also have been present at the public hearing on the application for that variance (or special permit), see Mullin v. Planning Bd. of Brewster, 17 Mass.App.Ct. 139, 143 (1983); however, that does not translate into a requirement that Board members hearing and voting on an appeal from the Commissioner’s denial of a stop work order must have also heard and voted on the grant of the underlying variance allowing such work to be performed. At best, the rule in Mullin would require the same Board members who voted on the appeal from the Commissioner’s Denial of a stop work order to have been present at the hearing of that appeal. See id. at 141-42 (holding that “(w)hen a municipal administrative board is acting in a judicial or quasi judicial capacity, ‘all [members of the board] who are to join in the decision must have attended the hearing’ ”), quoting McHugh v. Bd. of Zoning Adjustment of Boston, 336 Mass. 682, 684-85 (1958).
Here, there is no dispute that the five Board members who voted to allow the Rogers a variance were present at the hearing on the application of that variance or that the five Board members who voted to deny plaintiffs’ appeal of the Commissioner’s Decision were also the members who attended the hearing on that appeal. Therefore, no violation of the rule set forth in Mullin has occurred. Accordingly, as plaintiffs failed to state a cause of action in Count III, Count III must be dismissed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the City of Cambridge’s and the Rogers’ Motions to Dismiss are ALLOWED.

If the first part of Count I and Count IV could in any way be construed as addressing the Board's Building Permit Decision, the Court's reasoning and decision regarding the second part of Count I and Count II, infra, are equally applicable to them.

The Court further notes that it was plaintiffs' decision not to attend the hearing on the Rogers' application for a variance. Although plaintiffs may have decided their presence was unnecessary at the hearing and may have been considered by the Rogers as “unneighborly" based on misrepresentations made by the Rogers, or similarly chose not to attend the continued hearing on the variance, the instant appeal cannot be employed as a way to attack the allegedly fraudulently obtained variance. Moreover, the Dimensional Form filed with the Rogers' application for a variance was on file with the Board: and plaintiffs could have accessed that Form and any other plans filed with the Board in order to discover the alleged discrepancy between those plans upon which the variance was granted and those plans shown to plaintiffs.

General Laws c. 40A, §15 addresses appeals to a permit granting authority from, among other things, an order or decision of the inspector of buildings or other administrative official, see G.L.c. 40A, §8, and requires the Board to make “a detailed record of its proceedings, indicating the vote of each member upon each question . . . and setting forth clearly the reason for its decision and of its official actions . . .”