## OPINIONS OF THE JUSTICES.

### OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* "Anti-aid" amendment, Use of public money or property, Education. *Education,* "Anti-aid" amendment. *Taxation,* Income tax, Exemption.

A proposed statutory scheme providing for an income tax deduction for certain expenses incurred by taxpayers for the private elementary and secondary education of their dependent children would violate art. 46, § 2, of the Amendments to the Constitution of the Commonwealth, where a primary purpose of the proposed legislation was to aid private schools, where the resulting assistance to private schools would be substantial, and where the legislation conflicted with the general purpose of art. 46, § 2, by supporting the maintenance of private schools through a lessening of the financial burden on those choosing private school education. [1205-1210]

On October 19, 1987, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question set forth in an order adopted by the Senate on May 28, 1987, and transmitted to the Justices on June 2, 1987.[1] The order recites that there is pending before

---

[1] The Justices invited interested persons to file briefs on or before June 26, 1987, and they acknowledge the assistance of briefs submitted on behalf of Massachusetts Association of School Committees, Inc.; Civil Liberties Union of Massachusetts; Massachusetts Teachers Association; Catholic League for Religious and Civil Rights; and Citizens for Public Schools, American Jewish Congress, Boston Teachers Union, League of Women Voters, Massachusetts Advocacy Center and Massachusetts Federation of Teachers.

the General Court a bill, Senate No. 1893, entitled, "An Act providing a tax deduction for certain educational expenses." The order further recites that the bill, if enacted into law, would provide tax deductions for certain educational expenses incurred in attending public or nonprofit private primary and secondary schools, as well as for certain tutoring and related expenses, and that grave doubt exists as to the constitutionality of the bill if enacted into law. A copy of the bill was transmitted with the order.

Section 1 of the proposed bill would amend paragraph (2) of G. L. c. 62, § 2 (a), as amended through St. 1985, c. 593, § 3,[2] by adding the following subparagraph, and thus create an income tax deduction for: "(I) The amount paid to others, not to exceed one thousand dollars for each dependent in grades K1 to 6 and fifteen hundred dollars for each dependent in grades 7-12, for tuition, text books and transportation of each dependent in attending an elementary or secondary school, which is not operated for profit, as well as for tutoring services in subjects usually studied in said grades and, or, in preparation for standardized tests usually taken for secondary school or college admission. As used in this subparagraph, textbooks shall mean and include books and other instructional materials and equipment used in elementary and secondary schools in teaching only those subjects legally and commonly taught in public elementary and secondary schools in this state and shall not include instructional books and materials used in the teaching of religious tenets, doctrines or worship, the purpose of which is to inculcate such tenets, doctrines or worship, nor shall it include such books or materials for, or transportation to, extracurricular activities including sporting events, musical or dramatic events, speech activities, driver's education, or programs of a similar nature."[3]

---

[2] General Laws c. 62, § 2(a), has been further amended by St. 1986, c. 488, §§ 24 and 74.

[3] The remaining sections of the bill provide that § 1 of the bill shall apply to tax years commencing on or after January 1, 1988, and that the act shall take effect on its passage.

The question submitted is:

"Would said section one of said Senate No. 1893, if enacted into law, violate the provisions of section two of Article XLVI of the Articles of Amendment to the Constitution of the Commonwealth?"

The question concerns only § 2 of art. 46 of the Amendments to the Constitution, known as the "anti-aid" amendment. The Justices are not asked to consider, and expressly do not consider, whether Senate No. 1893 would violate the First Amendment to the Constitution of the United States.[4]

Article 46, § 2, of the Amendments to the Constitution, as it was rewritten in 1974 by art. 103 of the Amendments, provides in pertinent part: "No grant, appropriation or use of public money or property or loan of credit shall be made or authorized by the Commonwealth or any political subdivision thereof for the purpose of founding, maintaining or aiding any infirmary, hospital, institution, primary or secondary school, or charitable or religious undertaking which is not publicly owned and under the exclusive control, order and supervision of public officers or public agents authorized by the Commonwealth or federal authority or both . . . ." As an initial matter, it is clear that Senate No. 1893 involves a "grant, appropriation or use of public money" within the meaning of art. 46, § 2. The fact that the expenditure here takes the form of a tax deduction rather than a direct payment out of the Commonwealth's treasury does not alter the result, for it has been

---

[4] The Supreme Court's decision in *Mueller* v. *Allen*, 463 U.S. 388 (1983), in which a Minnesota statute providing tax deductions for educational expenditures was held not to violate the establishment clause of the First Amendment to the United States Constitution, need not enter our analysis. The language of our anti-aid amendment is "much more specific" than the First Amendment, *Opinion of the Justices*, 357 Mass. 836, 841 (1970), and its restrictions are "more stringent." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 332 (1982). Its prohibition is "emphatic and comprehensive," *Opinion of the Justices, supra* at 842, and it "marks no difference between 'aids,'" whether religious or secular." *Bloom* v. *School Comm. of Springfield*, 376 Mass. 35, 45 (1978). *Attorney Gen.* v. *School Comm. of Essex, supra* at 332 n.3.

recognized that the tax subsidies or tax expenditures of this sort are the practical equivalent of direct government grants. See *Regan* v. *Taxation with Representation,* 461 U.S. 540, 544-545 (1983). *Committee for Pub. Educ. & Religious Liberty* v. *Nyquist,* 413 U.S. 756, 791 (1973) (money involved in a tax deduction is a charge made against the State treasury). See S. Surrey, Pathways to Tax Reform (1973); Surrey, Tax Incentives as a Device for Implementing Government Policy: A Comparison with Direct Government Expenditures, 83 Harv. L. Rev. 705 (1970).[5] Recognition of the practical equivalence of tax deductions and government payments is evidenced further by the fact that analysis of tax expenditures is mandated by statute as part of the Commonwealth's annual budget process. G. L. c. 29, §§ 1, 5B (1986 ed.). Thus, Senate No. 1893 must be tested under art. 46, § 2.

There are three criteria for testing the sufficiency of a statute under art. 46, § 2: "(1) whether the purpose of the challenged statute is to aid private schools; (2) whether the statute does in fact substantially aid such schools; and (3) whether the statute avoids the political and economic abuses which prompted the passage of art. 46." *Commonwealth* v. *School Comm. of Springfield,* 382 Mass. 665, 675 (1981). These somewhat cumulative and interrelated criteria do not outline precise limits to the inquiry; rather, they are "guidelines to a proper analysis." *Id.,* quoting *Colo* v. *Treasurer & Receiver*

---

[5] By contrast, the Supreme Judicial Court has recognized that "[e]xemptions from property taxation accorded to schools (G. L. c. 59, § 5) entail no 'grant, appropriation or use' of public money within the meaning of the anti-aid amendment, as was made clear at the 1917 convention," by which art. 46 was submitted. *Bloom* v. *School Comm. of Springfield, supra* at 48, citing 1 Debates in the Massachusetts Constitutional Convention, 1917-1918 at 361 (1919); R.L. Bridgman, The Massachusetts Constitutional Convention of 1917, at 34 (1923). The reason for the distinction is the long tradition of acceptance of property tax exemptions which predated the 1917-1918 convention. See 1 Debates, *supra* at 360-361. See also *Committee for Pub. Educ. & Religious Liberty* v. *Nyquist, supra* at 792-794 (paying deference to tax exemption for church property which predated the First Amendment, and contrasting the wide-ranging "benevolent neutrality" of this exemption with the "recent innovation" of benefits specifically designed to aid nonpublic institutions).

*Gen.,* 378 Mass. 550, 558 (1979). The answer to the question necessarily involves some balancing of the considerations involved.

a. *Purpose test.* Article 46, § 2, especially when viewed in light of its history, requires that we consider the purpose or purposes of the proposed legislation to ascertain whether the legislation has been proposed "for the purpose of founding, maintaining or aiding" private schools. *Commonwealth* v. *School Comm. of Springfield, supra* at 679. In this case, there is no statutory preamble, no proposed legislative findings, and no legislative history.[6] Thus, the focus of the inquiry is on the bill itself. We look to the statutory scheme and to the anticipated functioning of the legislation to determine whether any implicit legislative purpose conflicts with art. 46, § 2. Cf. *Commonwealth* v. *School Comm. of Springfield, supra* at 677-678 (setting forth this inquiry in the context of enacted legislation). We must examine the proposed legislation to discern whether the Legislature has attempted to circumvent the strictures of art. 46, § 2, through the use of facially valid language. See Attorney *Gen.* v. *School Comm. of Essex,* 387 Mass. 326, 330-331 (1982); *Commonwealth* v. *School Comm. of Springfield, supra* at 676-677.

The bill would create a tax deduction for amounts expended on three types of education-related expenditures: tuition, textbooks, and transportation. A deduction would be available for each of a taxpayer's dependents who attends an elementary or secondary school which is not operated for profit. Thus, the proposed tax deduction would be available to taxpayers whose dependents attend public school as well as to those whose dependents attend private and parochial schools. The bill also would create a deduction for amounts expended for tutoring services in the subjects usually studied at the elemen-

---

[6] Unenacted legislation, when considered by the Justices in an advisory opinion, does not benefit from the presumption of constitutionality that applies when the Supreme Judicial Court considers a postenactment constitutional challenge to legislation. See *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 371 & n.7 (1979).

tary and secondary school levels, and amounts expended for preparation for standardized tests usually taken for secondary school or college admission. The bill expressly excludes from the definition of "textbook" any "instructional books and materials used in the teaching of religious tenets, doctrines or worship, the purpose of which is to inculcate such tenets, doctrines or worship."

We think it plain that the statutory scheme and the anticipated functioning of Senate No. 1893, particularly in so far as deductions for tuition and textbooks are concerned, disclose an intent to aid and to maintain private schools. A deduction for tuition and textbook expenditures would be of little or no benefit to parents of public elementary or secondary school students. Public school students receive their education, including textbooks, from municipalities in the Commonwealth free of charge. G. L. c. 71 (1986 ed.). Therefore, the benefits of these proposed tax deductions would flow exclusively to those taxpayers whose dependents attend private schools and, as a result, to the private schools themselves.[7]

"[T]he form of payment to a private school is not dispositive on the issue whether the payment is prohibited." *Commonwealth* v. *School Comm. of Springfield, supra* at 676-677. If aid has been channeled to the student rather than to the private school, the focus still is on the effect of the aid, not on the recipient. In *Bloom* v. *School Comm. of Springfield,* 376 Mass. 35 (1978), the court examined a textbook loan program and held that it was "without significance under the terms of our anti-aid amendment" that textbooks would be loaned to the students rather than to the private schools they attended. *Id.* at 42. The effect of the loans to the students would be to aid the

---

[7] The Commonwealth already authorizes municipalities to provide transportation for public school and private school students alike in a comprehensive program pursuant to G. L. c. 76, § 1. This program was held constitutional under the anti-aid amendment in *Attorney Gen.* v. *School Comm. of Essex,* 387 Mass. 326 (1982), at least in part because "the purpose of school transportation [is to promote] the health and safety of school children." *Id.* at 331, quoting *Murphy* v. *School Comm. of Brimfield,* 378 Mass. 31, 41 (1979). Thus, a deduction limited to amounts expended on transportation would not clearly offend against the anti-aid amendment.

schools "in their very teaching function." *Id.* In *Opinion of the Justices,* 357 Mass. 846 (1970), the Justices examined proposed legislation that would have allocated money in the form of vouchers to students attending private elementary and secondary schools. The money was to be paid only upon the payee's indorsement of the voucher to the school of his or her choice. The Justices looked to the "practical effect" of the voucher system and found that it involved "an indirect form of aid to nonpublic schools" which would violate § 2 of art. 46. *Id.* at 850. The tax deduction proposed in Senate No. 1893 is no less a form of financial assistance to private schools than are the voucher and textbook loan programs earlier deemed unconstitutional.[8]

We do not consider this assistance to private schools to be only an incidental purpose of Senate No. 1893. In *Commonwealth* v. *School Comm. of Springfield, supra,* the court rejected an anti-aid amendment challenge to the statutory scheme presented by St. 1972, c. 766, whereby children with special educational needs were placed and educated in approved private schools at the Commonwealth's expense. In concluding that the purpose of c. 766 was primarily "to benefit public schools and individual children," *id.* at 678, and only incidentally to aid the private schools, the court focused on two limiting features of c. 766. First, private school placements were authorized only when the appropriate special education plan for a child was not available within the public school system. *Id.* at 677. Second, and more importantly, the statute did not permit the reimbursement of special education expenses for children whose parents unilaterally enrolled them in private school. The private placement provisions only applied to children who sought special education through the public school system, but who were identified as requiring special services which the school system either could not or would not provide. *Id.*

Neither of these limiting provisions is present in Senate No. 1893. The deductions proposed in Senate No. 1893 would be

[8] Four years after the issuance of this opinion, art. 46, § 2, was amended by art. 103 of the Amendments to the Constitution. Article 103 recast the core prohibitory language of art. 46, § 2, with certain modifications not here material. See *Bloom* v. *School Comm. of Springfield, supra* at 40-41.

available for private school expenditures for all children, including those whose parents directly and unilaterally enroll them in the private schools and to whom a similar education is available in the public schools. We conclude that one of the primary purposes of Senate No. 1893, if not its only purpose, is to aid the private schools.

b. *Substantial aid test*. We further inquire whether the tax deduction authorized by the proposed legislation would provide "substantial assistance" to private schools. See *Attorney Gen. v. School Comm. of Essex, supra* at 332. While the aid must amount to substantial assistance, *id.,* it need not comprise "a major portion of the total expense of such a school." *Commonwealth v. School Comm. of Springfield, supra* at 679. In applying this test, the court has examined the amount of aid furnished and the number of students affected by the aid, *Commonwealth v. School Comm. of Springfield, supra* at 680, as well as the degree to which the aid assists private schools in carrying out the essential function of teaching. *Attorney Gen. v. School Comm. of Essex, supra* at 333-334.

The amount of aid at issue here, although it would not amount to a major portion of the cost of operating a private school, would be neither minimal nor insignificant. At the five per cent rate of taxation prescribed in G. L. c. 62, § 4 (*b*) (1986 ed.) (which specifies the tax rate on taxable earned income for Massachusetts residents), the proposed tax deduction would yield a maximum possible saving on taxes of $50 a dependent in grades K1 to 6, and of $75 in grades 7 to 12. The most recently published figures indicate that, as of October 1, 1986, 146,567 students had enrolled in private elementary and secondary schools in Massachusetts. Individual School Report, Massachusetts Department of Education, Bureau of Data Collection, Public Summary 4 (1987). Thus, in the aggregate, the tax deduction proposed by Senate No. 1893 would result in a sizable subsidy to private schools and in an equally large reduction in the Commonwealth's tax revenues. This amount of aid is not insubstantial.

The substantial nature of the aid is underscored further by the fact that the proposed deduction is essentially a reimburse-

ment for, among other things, private school tuition and textbooks. The aid is not limited to benefits that are remote from the essential function of the schools, benefits such as transportation,[9] police and fire protection, and the provision of sewers and public ways. *Attorney Gen.* v. *School Comm. of Essex, supra* at 333. Rather, the aid provided by Senate No. 1893 would underwrite the teaching function, "the school's essential enterprise." *Id.* See *Bloom* v. *School Comm. of Springfield, supra* at 42. We conclude that the deduction authorized by the proposed legislation would constitute "substantial assistance" to private elementary and secondary schools.

c. *Political and economic abuse test.* Finally, we consider Senate No. 1893 in light of the history and purpose of the anti-aid amendment. See *Commonwealth* v. *School Comm. of Springfield, supra* at 671-673, 682-683; *Bloom* v. *School Comm. of Springfield, supra* at 39-44; *Attorney Gen.* v. *School Comm. of Essex, supra* at 334-335. The framers of art. 46, § 2, were "concerned about aid to sectarian institutions and, more generally, with halting the politically divisive and financially wasteful practice of direct aid to private schools and institutions." *Commonwealth* v. *School Comm. of Springfield, supra* at 683. See *Attorney Gen.* v. *School Comm. of Essex, supra.* As noted, the tuition and textbook expenditures for which Senate No. 1893 would authorize a deduction include those paid to private elementary and secondary schools. Thus, the proposed legislation would violate the more general purpose of art. 46, § 2, in that it would "support the on-going maintenance of private schools by lessening the financial burden of those who have elected a private school education," *Commonwealth* v. *School Comm. of Springfield, supra* at 683, a factor

---

[9] The Supreme Judicial Court has held that providing transportation to public and private school students under G. L. c. 76, § 1, provides only remote, not substantial, aid to private schools, noting that "[t]ransportation to and from these schools . . . does 'no more than provide a general program to help parents get their children . . . safely and expeditiously to and from accredited schools.'" Attorney *Gen.* v. *School Comm. of Essex,* 387 Mass. 326, 333-334 (1982), quoting *Everson* v. *Board of Educ. of Ewing,* 330 U.S. 1, 18 (1947).

the Supreme Judicial Court has termed "critically important." *Attorney Gen.* v. *School Comm. of Essex, supra* at 335.

d. *Conclusion.* After considering the three criteria discussed above, the undersigned Justices conclude that Senate No. 1893, if enacted, would violate art. 46, § 2, of the Amendments to the Constitution of the Commonwealth, at least in so far as it authorizes a tax deduction for amounts expended on tuition and textbooks for students of private elementary and secondary schools.

The undersigned Justices answer the question, "Yes."

The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the 19th day of October, 1987.

EDWARD F. HENNESSEY
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS
JOSEPH R. NOLAN
NEIL L. LYNCH
FRANCIS P. O'CONNOR