FRANCIS G. HELMES & others[1] *vs.* COMMONWEALTH & others.[2]

Suffolk. January 11, 1990.—March 8, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Charity. Public Works*, Bidding procedure. *Constitutional Law*, "Anti-aid" amendment, Use of public money or property. *Words*, "Public works."

Overhaul of a battleship, a historic war memorial owned by a charitable corporation, although publicly financed, was not a public work subject to the competitive bidding requirements of G. L. c. 30, § 39M. [875-876]

Payment of public funds to a charitable corporation to rehabilitate and preserve a historic war memorial for the education of the public did not contravene the anti-aid amendment, art. 18, as amended by arts. 46 and 103, of the Amendments to the Constitution of the Commonwealth. [876-878]

The judge in a civil matter correctly denied the plaintiffs' request for a preliminary injunction to enjoin the expenditure of public funds where the plaintiffs did not demonstrate a likelihood of success on the merits. [878]

CIVIL ACTION commenced in the Superior Court Department on June 23, 1989.

A motion for a preliminary injunction was heard by *John C. Cratsley*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kevin F. Moloney* for the plaintiffs.

[1]Thirty-five taxable inhabitants of the Commonwealth.

[2]The Commissioner of Education & the intervener, U.S.S. Massachusetts Memorial Committee, Inc.

*Morris M. Goldings (Alice E. Moore* with him) for U.S.S. Massachusetts Memorial Committee, Inc.

*Lawrence P. Fletcher-Hill,* Assistant Attorney General, for the Commonwealth & another.

WILKINS, J. On June 23, 1989, the plaintiffs, more than "twenty-four taxable inhabitants of the commonwealth," commenced this action under G. L. c. 29, § 63 (1988 ed.), seeking to restrain the Commonwealth, acting through the Commissioner of Education, from the expenditure of money, or the incurring of obligations purporting to bind the Commonwealth, for the alteration, remodeling, or repair of the battleship U.S.S. Massachusetts. The plaintiffs claim that (1) the project is a public work subject to the competitive bid requirements of G. L. c. 30, § 39M (1988 ed.), and (2) payment of public funds toward the project would violate art. 18, as amended by arts. 46 and 103, of the Amendments to the Constitution of the Commonwealth, the so-called anti-aid amendment, which we refer to as art. 46.

On July 14, 1989, a judge of the Superior Court denied the plaintiffs' request for a preliminary injunction against the expenditure of public funds for work on the battleship, which is designated as the Massachusetts World War II Memorial. See G. L. c. 6, § 124A (1988 ed.). Previously, the judge had allowed the intervention of the U.S.S. Massachusetts Memorial Committee, Inc. (committee), a charitable corporation (see G. L. c. 6, § 124A) formed pursuant to G. L. c. 180 (1988 ed.). The plaintiffs appealed pursuant to G. L. c. 231, § 118, 2d par. (1988 ed.), and also sought interlocutory relief from a single justice of the Appeals Court under G. L. c. 231, § 118, 1st par. On July 27, 1989, a single justice of the Appeals Court denied interlocutory relief. We transferred the plaintiffs' appeal here on our own motion.

The committee was established in 1964, and, in 1965, it entered into a contract with the United States Navy for the conveyance of the battleship Massachusetts to the committee. The committee made certain commitments to the Navy concerning the maintenance of the battleship and further agreed to establish it, on a nonprofit basis, as a public memo-

rial exhibit, at a suitable site in the Commonwealth, available for public exhibition. The battleship has been open to the public as a permanent war memorial and has been open free of charge to every school student in the State.

The ship is in need of substantial repairs. In 1988, the Legislature authorized the Commissioner of Education to expend up to $6,000,000 for the maintenance, repair, renovation, and overhaul of the ship by the committee. St. 1988, c. 15, §§ 37, 38. In October, 1988, the committee entered into a contract with the Commonwealth concerning expenditure of the appropriated funds. Thereafter, the committee made plans for the repair of the ship, secured a dry dock to which the ship would be towed, engaged an engineering firm to manage the project, and accepted a proposal from General Ship Corporation (General Ship) concerning certain preliminary work on the ship. The work commenced in June, 1989. The contract is a cost-plus agreement that was not the subject of competitive bids. The Commonwealth has incurred expenses of approximately $1,500,000, some but not all of which have been paid. On November 1, 1989, after this appeal had been entered in the Appeals Court, further work on the ship was postponed indefinitely.[3]

1. Under G. L. c. 30, § 39M (*a*), "[e]very contract for the construction, reconstruction, alteration, remodeling or repair of any public work . . . by the commonwealth, or political subdivision thereof," expected to cost more than $5,000, must be awarded "to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened." No such bid procedure was followed here. The plaintiffs argue that the contract between the committee and General Ship

---

[3]The defendants state that plans to have the battleship towed to a dry dock have been postponed and no further payments of public funds will be made, except for claims for work already completed. They argue that, because of these facts, no injunction is warranted. The defendants, however, have not shown, as they claim, that, by abandoning further work, the Commonwealth is not "about to expend money" within the meaning of G. L. c. 29, § 63, for a purpose asserted to be unlawful. See *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 318 (1951). We thus see no basis for not deciding the preliminary injunction issue at this time.

was subject to the requirements of § 39M (*a*). The defendants reply that the project does not involve a "public work" and that the contract was not made by the Commonwealth or any political subdivision of the Commonwealth.

The committee, of course, is not a political subdivision of the Commonwealth. It is a charitable corporation organized under the General Laws of the Commonwealth. See G. L. c. 6, § 124A. The plaintiffs, in fact, rely heavily on this point in their second argument to us. There is no basis, on the preliminary injunction record, to conclude that the committee was acting as an agent of the Commonwealth in entering into the contract with General Ship. Consequently, the plaintiffs have not shown that § 39M (*a*) applies to that contract. Although we would be reluctant to conclude that § 39M (*a*) would never apply to work on a ship (but see *Andover Consultants, Inc.* v. *Lawrence*, 10 Mass. App. Ct. 156, 160 [1980]), § 39M (*a*) does not apply to a ship like the U.S.S. Massachusetts, which is owned neither by the Commonwealth nor a political subdivision and on which work is being done under contract with a charitable corporation. Cf. *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.,* 10 Mass. App. Ct. 360, 362 (1980) (privately owned, but publicly financed, low and moderate income housing complex not public work under G. L. c. 149, § 29).

2. The payment of public funds to the committee to meet the committee's expenses in rehabilitating the battleship does not violate the anti-aid amendment. In *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 675 (1981), which concerned the payment of public funds to private schools to aid children with special needs, we listed three guidelines to analysis in deciding whether a particular expenditure of public funds would violate art. 46. Those guidelines are: "(1) whether the purpose of the challenged statute is to aid [a private charity]; (2) whether the statute does in fact substantially aid [a private charity]; and (3) whether the statute avoids the political and economic abuses which prompted the passage of art. 46." *Id*. We consider each criterion in turn.

The public purpose of the expenditures is to rehabilitate the battleship, to preserve it as a memorial to citizens of the Commonwealth who fought and died in World War II and to educate the public, particularly school children. We see no evidence of a purpose to aid the committee as such. The available public funds must be used for the designated public purpose, and, once repaired, the ship must be used to further public purposes.

The aid given to the committee is substantial in the sense that, without public funds, the battleship presumably could not continue as a war memorial and likely would be forfeited to the United States Navy. The committee would then be unable to fulfil its stated purpose. No public funds, however, benefit the committee beyond permitting it to carry out its essential enterprise. The public moneys involved here substantially aid the private charity in the sense indicated.

The third guideline concerns the avoidance of the political and economic abuses that prompted adoption of art. 46. Opinions involving the anti-aid amendment have generally concerned the use or proposed use of public funds with respect to private schools. See, e.g., *Opinion of the Justices*, 401 Mass. 1201, 1209-1210 (1987); *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 334-335 (1982); *Commonwealth* v. *School Comm. of Springfield, supra* at 683; *Bloom* v. *School Comm. of Springfield*, 376 Mass. 35, 37 (1978); *Opinion of the Justices*, 357 Mass. 836, 837-838 (1970). The anti-aid amendment was focused on the practice of granting public aid to private schools. *Bloom* v. *School Comm. of Springfield, supra* at 39-41. The language of art. 46, however, reads more broadly by forbidding the use of public money for the purpose of "maintaining or aiding any . . . institution . . . or charitable or religious undertaking which is not publicly owned." See *Opinion of the Justices*, 357 Mass. 836, 844 (1970) (art. 46 forbids "aid from appropriated funds to any nonpublic institution not within [art. 46's] very limited exceptions").

We, therefore, apply in this case the third criterion or guideline to test the appropriateness of the use of public

funds. In these circumstances, however, that criterion must be redefined to present the question whether there is any use of public money that aids a charitable undertaking in a way that is abusive or unfair, economically or politically. We see in this record no abuse or unfairness, political or economic, in using public funds to preserve an historic memorial to war dead in circumstances in which no private person appears likely to benefit specially from the expenditure. There is no indication that, on dissolution of the committee, its assets would be distributable to other than a public charitable use. The plaintiffs make no showing that the committee's charitable objective or the means for achieving that objective are not generally accepted.

3. We conclude that the plaintiffs have not demonstrated a likelihood of success on the merits, and thus the motion judge did not err in denying a preliminary injunction. The order denying a preliminary injunction is affirmed.

*So ordered.*