Moriarty, Cornelius J., J.
Plaintiffs Miramar Park Association, Inc. (“the Association”) and the individual homeowners filed this action pursuant to G.L.c. 214, §7A seeking to enjoin the Town of Dennis from depositing dredged sediment on a Town-owned updrift beach instead of depositing it on the down drift beach owned by the Association. This matter is before the court on the Plaintiffs’ Motion For Summary Judgment pursuant to Mass.R.Civ.P. 56 and the Defendant Town of Dennis’ Cross Motion For Summary Judgment. For the reasons discussed below, the Plaintiffs’ motion is ALLOWED and the Town’s Cross Motion is DENIED.
BACKGROUND
The undisputed facts revealed by the summary judgment record are as follows. The Association is an incorporated non-profit organization that owns a beach on Nantucket Sound located at the end of Miramar Road in Dennisport (“Miramar Beach”). The beach lot is shown as Lot 88 on Plan 11503-J recorded in the Barnstable Registry District of the Land Court. The individual plaintiffs each own a lot of land within a beach community in Dennisport known as Miramar Park. Each individual plaintiff is a member of the Association and has an easement appurtenant to the land to use Miramar Beach for recreational activities.
To the west of Miramar Beach is a tidal river, Swan Pond River. There is no jetty on the easterly side of the river. There is a stone jetty located on the westerly side of the mouth of Swan Pond River that traps littoral drift material. By interrupting the flow of sediment, the jetty leaves the down drift Miramar Beach with a deficit of sediment. The jetty does not have a sand by-pass system. Miramar Beach, on the east side of the river, is eroding; the beach on the westerly side of the jetty is accreting; and the mouth of the Swan Pond River is filling in, reducing the tidal flow in the river. The reduced tidal flow has reduced the flushing of Swan Pond, a pond at the end of the river. The reduced flushing of the pond has resulted in algae blooms, fish kills, and foul odors.
In the late 1980s and early 1990s, the Town spent $200,000 to obtain engineering services, extend the jetty, dredge, and perform water testing to increase the tidal flow within Swan Pond River and Swan Pond. In November of 1990, the Town acquired easements from the owners of the property on which the jetty is situated for “dredging, rip rap, and environmental purposes.” Those easements include “the right to excavate and remove dredging material; to place dredging material; to maintain, repair and improve an existing revetment; to construct, maintain and repair a new revetment; [and] to perform related work necessary for said purposes ...” The Town performed maintenance and repair work on the jetty, and expanded and lengthened it. Despite these efforts, there continued to be a periodic buildup of sediment at the entry of the mouth of the Swan Pond River.
In October of 1992, twenty-five residents of Mira-mar Park petitioned the Board of Selectmen requesting that the Town build a second jetty at the mouth of Swan Pond River to trap the sand eroding from Mira-mar Beach and stabilize the mouth of the river. The petition also requested that the Town dredge the mouth of the river and place the dredge material on the eroding Miramar Beach. In the Spring of 1994, the Town began to formulate plans to dredge the river and place the dredge spoils onto Miramar Beach. In April of 1994, the Town acquired a permanent easement from Virginia Thomason, who at that time owned Miramar Beach, that granted the Town and the public a permanent right of on-foot passage along and across the shore of the coastline. On June 28, 1994, the Board of Selectmen voted to accept the Thomason easement and easements from Miriam Plumb and Nathaniel Rutter, for the purposes of dredging the mouth of Swan Pond River and placing the dredge spoils on the east side of the river. The easements state that the beach will be restored, enhanced, and protected by the publicly funded beach nourishment project.
In 1996, the Town dredged the mouth of the Swan Pond River and deposited the dredge spoils on Mira-mar Beach. The Town’s dredging of Swan Pond River was and is publicly funded. This beach nourishment improved the condition of Miramar Beach. However, *117 over time, Miramar Beach continued to erode and sand from the beach flowed into the mouth of Swan Pond River, obstructing the tidal flow.
In 2008, the Town began planning an emergency project to protect a bulkhead on West Dennis Beach, a public beach owned by the Town one mile west of Swan Pond River. The Town planned to dredge Swan Pond River and deposit the dredge spoils on West Dennis Beach, forming a sand dune to protect the bulkhead. The Association inquired why the Town planned to transport the sand to West Dennis Beach instead of depositing it on Miramar Beach. In a January 20, 2009 email, the Town’s Natural Resource Officer, Brian Malone (“Malone”), informed the Association that the dredging would improve the water quality of Swan Pond which recently had opened for shellfishing after twenty years, and that construction of a dune at West Dennis Beach was necessary to protect the parking lot and integrity of the barrier beach. Malone noted that the Town Meeting appropriation for the dredging was limited to expenditure at West Dennis Beach. Malone further stated:
The Department is aware that in March of 1994, a few residents located along Miramar Avenue, agreed to grant an “on-foot” right-of-passage easement, in perpetuity to the general public, and that the Town agreed to deposit dredge material on the beach of the Miramar properties.
The DNR file in this matter contains several letters from the former Director of Natural Resources, George MacDonald, to these property owners, wherein he informed the Grantors of the Easements that the dredge spoils deposited on their beaches, in exchange for granting the Easements, were limited to the “existing permits" which expired in 2003. He stated: “the Town will have to go through a new permit process again and seek new permits. Any new permit would give the Town the right to seek any new disposal area... in the best interest of the Town.”
We have received an opinion from our Town Counsel, stating that the easements granted in 1994 by their terms do not convey a duty to perform ongoing beach nourishment to the Miramar properties.
(Emphasis in original.)
In 2010, the Town proceeded with the emergency project and dredged 30,000 cubic yards of sediment from the mouth of Swan Pond River and deposited it on West Dennis Beach. Thereafter, the plaintiffs observed significant erosion of Miramar Beach and accretion of sand in the mouth of Swan Pond River. In connection with the 2010 dredging, the Town obtained permits from the Dennis Conservation Commission under the Wetlands Protection Act (“WPA”) and the Town Wetlands Bylaw. In addition, the Town obtained permits from DEP under the Chapter 91 Waterways Act; the 401 Water Quality Certification Program; and the Massachusetts Environmental Policy Act (“MEPA”). The Town filed with the Division of Fisheries and Wildlife Natural Heritage and Endangered Species Program, and obtained a public benefit determination from the Executive Office of Energy and Environmental Affairs. Neither the Association nor any of the individual plaintiffs brought an administrative or judicial appeal of any of these permits or approvals.
The Association retained coastal geologist Stanley Humphries of LEC Environmental Consultants, Inc. to conduct a study of Miramar Beach. LEC’s July 2012 report concluded that the construction of a stone jetiy on the west side of the inlet changed the dynamics of the natural sediment transport direction, causing Mir-amar Beach to begin to erode. The report concluded that the 2010 dredging of 30,000 cubic yards of sediment adversely affected Miramar Beach, which would benefit from dredged materials being placed there in the future. LEC’s report opined that the Town had violated 310 Code Mass. Regs. §10.27(4)(c), which states that jetties trapping littoral drift material shall contain a sand bypass system to transfer sediments to the down drift side of the inlet or shall be periodically re-dredged to provide beach nourishment to down drift beaches. While conducting research for the LEC report, Humphries learned that the Town had retained the Woods Hole Group to perform a study of the coastal processes at work at the mouth of the Swan Pond River. Woods Hole Group prepared a November 2010 report for the Town entitled, “Final Waterway Assets and Resources Survey Master Plan for Dredging and Beach Nourishment For Town of Dennis, Massachusetts.” This report reached the same conclusion as LEC that the dominant sediment transport direction in the vicinily of Swan Pond River is west to east.
In September of 2012, counsel for the Association and some of its members met with Town officials to express their concerns about the Town’s maintenance dredging. However, the Association did not mount any legal challenge to the Town’s plans at that time.
The Town planned to perform maintenance dredging of Swan Pond River in September of 2014 and deposit the dredged materials on West Dennis Beach to fortify the Town’s bulkhead. The Association requested that the Town deposit the dredge spoils on Miramar Beach, but the Town refused to do so. The proposed dredging was authorized under the State permits previously obtained in 2010. In addition, the Town obtained a Section 404 Programmatic General Permit from the U.S. Army Corps of Engineers. The Association did not file any appeal of that permit.
On September 10, 2014, the Association and the individual plaintiffs filed this action pursuant to G.L.c. 214, §7A, alleging imminent environmental harm from the Town’s anticipated maintenance dredging. The Association seeks a declaratory judgment that the Town’s planned dredging violates 310 Code Mass. Regs. §10.27(4)(c) and will cause erosion to Miramar *118 Beach. The Association also seeks a permanent injunction restraining the Town from performing any dredging of Swan Pond River unless the dredge spoils are placed on Miramar Beach in compliance with 310 Code Mass. Regs. §10.27(4)(c).
In a Memorandum of Decision and Order dated September 15, 2014, this Court (Muse, J.) denied the temporary restraining order sought by the Association, noting that the Town had substantial defenses to the Association’s claims and that any erosion to Mir-amar Beach caused by the scheduled dredging could be remediated through court order should the Association succeed on the merits. The Town performed the dredging as planned in September of 2014 and deposited the dredge spoils on West Dennis Beach. Since the September 2014 dredging, there has been a significant build up of sediment at the mouth of the river which has negatively affected navigation and reduced the flow of the river, causing algae blooms and fish kills.
As recommended by the Woods Hole Group report, the Town is currently developing a 10-Year Comprehensive Dredge Plan for dredging at numerous locations and the use of the dredge spoils to nourish several Town-owned beaches. Under this Plan, the Town is seeking a comprehensive permit from various agencies to consolidate dredging and material disposal activities, rather than seeking numerous permits for individual projects. The Town submitted an Expanded Environmental Notification Form to the Secretary of Energy and Environmental Affairs (“the Secretary”) pursuant to MEPA. The Secretary acknowledged the receipt of public comments from the Association asserting that the Town was required to deposit the dredge spoils on Miramar Beach. The Secretary noted that if the Town obtains surplus dredging materials from its projects, it will consider selling the material to outside parties under Chapter 30B. On October 23, 2015, the Secretary issued a Certificate to the Town certifying that the Town’s proposal does not require the filing of an Environmental Impact Report.
The Town planned to conduct further dredging of 5,000 cubic yards of material from the mouth of Swan River Pond in November of 2016. On May 3, 2016, the Town Meeting voted to raise and appropriate $50,000 in funds for the Town’s Harbor Department to dredge Swan Pond River. The cost to the Town is approximately nine to twelve dollars per cubic yard. The Town planned to deposit the dredge spoils at West Dennis Beach, which has experienced significant erosion in recent years. The deposited sand will serve the following purposes: beach nourishment, storm protection, protection of wildlife habitat, and bolstering the sand dune that protects a public parking lot. This dredging would be a continuation of the maintenance dredging project that was previously permitted in 2009, 2010, and 2014. The permits that allowed the prior dredging remain in effect, except for the permit from the U.S. Army Corps of Engineers, which has expired. The Town is seeking an extension of that permit, but the Town’s inability to obtain one will delay the planned dredging until 2017.
DISCUSSION
Summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The party moving for summary judgment bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17.
Chapter 214, section 7A allows ten citizens of a county to bring suit in Superior Court seeking an injunction against “damage to the environment [which] is occurring or is about to occur,” if the damage “constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment.” G.L.c. 214, §7A. The Town contends that the Association has no reasonable expectation of proving damage to the environment because the dredging at issue has already been reviewed and approved by numerous State and Federal environmental agencies. See, e.g., Collora v. Newton Conservation Comm’n, 1995 WL 1146116 at *3 (Mass.Super.Ct.) (Smith, J.) (granting summary judgment where plaintiffs failed to allege specific significant environmental impact from proposed residential development that was subject to DEP Order of Conditions to protect environment, “convincing this court that G.L.c. 214, §7A does not apply”). Foremost, it is unclear from the record whether, in issuing permits under the WPA, the Conservation Commission and DEP considered the issue of compliance with 310 Code Mass. Regs. §10.27(4)(c). Further, this Court is not persuaded that a project permitted by a regulatory agency can never be deemed to pose a threat of damage to the environment for purposes of §7A. See, e.g., Canton v. Commissioner of the Mass. Highway Dept., 455 Mass. 783, 793 (2010) (noting that for purposes of MEPA, issuance of DEP permit for project marks time when harm to environment is about to occur under §7A). Cf. Lummis v. Lilly, 385 Mass. 41, 46-47 (1982) (license from regulatory authority does not immunize licensee from liability from negligence or nuisance flowing from licensed activity).
*119 The Town further contends that the Association has no reasonable expectation of proving damage to the environment because damage to a private beach is not a protected interest under §7A. The statute defines damage to the environment as “any destruction, damage or impairment, actual or probable, to any of the natural resources of the commonwealth . . .” G.L.c. 214, §7A. The statute does not, by its terms, restrict the availability of relief to damage to natural resources owned by the Commonwealth. See Canton v. Commissioner of the Mass. Highway Dept. 455 Mass. at 794 (court will not read into statute words that Legislature could have but chose not to include). The Legislature apparently recognized that the public interest in the environment is served by preventing damage to natural resources located on private property. See, e.g., Joyal v. Marlborough, 1995 WL 809017 at *3 (Mass.Super.Ct.) (Cowin, J.) [3 Mass. L. Rptr. 379] (enjoining under §7A operation of composting facility where damage to environment was allegedly caused by violation of DEP air pollution regulation, and consisted of neighbors’ inability to enjoy their private property due to noxious odors). The “destruction of seashores” is specifically included in the §7A definition of damage to the environment. Accordingly, the Town is not entitled to judgment as a matter of law on the ground that the harm shown is the erosion of a privately owned beach.
The Town next contends that the Association cannot establish that it violated an environmental statute or regulation as required by G.L.c. 214, §7A. See Ten Persons of the Commonwealth v. Fellsway Develop., LLC, 460 Mass. 366, 375 (2011) (relief under §7A requires damage caused by violation of environmental statute or regulation). The Association’s claim is premised on a DEP regulation regarding coastal beaches that provides in relevant part:
WHEN A COASTAL BEACH IS DETERMINED TO BE SIGNIFICANT TO STORM DAMAGE PREVENTION, FLOOD CONTROL, OR PROTECTION OF WILDLIFE HABITAT, 310 CMR 10.27(3) THROUGH (7) SHALL APPLY:
(3) Any project on a coastal beach . . . shall not have an adverse effect by increasing erosion, decreasing the volume or changing the form of any such coastal beach or an adjacent or downdrift beach.
(4) Any groin, jetty, solid pier, or other such solid fill structure which will interfere with littoral drift, in addition to complying with 310 CMR 10.27(3), shall be constructed as follows:
(a) It shall be the minimum length and height demonstrated to be necessary to maintain beach form and volume . . .
(b) Immediately after construction any groin shall be filled to entrapment capacity in height and length with sediment of grain size compatible with that of the adjacent beach.
(c)Jetties trapping littoral drift material shall contain a sand by-pass system to transfer sediments to the downdrift side of the inlet or shall be periodically redredged to provide beach nourishment to ensure that downdrift or adjacent beaches are not starved of sediments.
310 Code Mass. Regs. §10.27. The Association argues that the Town’s maintenance dredging violates §10.27(4)(c) because the jetty near Swan Pond River traps littoral drift material and lacks a sand bypass system, leaving the down drift Miramar Beach with a deficit of sediment, but the Town has failed to deposit dredge spoils on Miramar Beach.
“The purpose of 310 CMR 10.00 is to define and clarify [the decision-making] process by establishing standard definitions and uniform procedures by which conservation commissions and the Department may cany out their responsibilities under M.G.L.c. 131, §40.” 310 Code Mass. Regs. §10.01(2). The regulations applicable to coastal wetlands are set forth at §10.21 through §10.37. The introduction to these regulations explains that:
310 CMR 10.21 through 10.37 apply to all work subject to M.G.L.c. 131, §40, which will alter, dredge, fill, or remove any coastal beach, coastal dune, tidal flat, coastal wetland [etc.]. 310 CMR 10.27 through 10.37 are intended to ensure that development along the coastline is located, designed, built and maintained in a manner that protects the public interest in the coastal resources listed in M.G.L.c. 131, §40. The proponent of the work must submit sufficient information to enable the issuing authority to determine whether the proposed work will comply with 310 CMR 10.27 through 10.37 . . . 310 CMR 10.27 through 10.37 are in the form of performance standards and shall be interpreted to protect those characteristics and resources to the maximum extent possible under M.G.L.c. 131, §40.
310 Code Mass. Regs. §10.01(1). Thus, the regulation cited by the Association is a performance standard to be applied by the Conservation Commission and/or DEP when issuing an order of conditions for a project under the WPA. It is unclear who originally constructed the jetty at issue, which occurred several decades ago. To the extent that the regulation applies to the construction of a jetty on a coastal beach, the Town is correct that it is not triggered by the periodic dredging of Swan Pond River, which is not a coastal beach but rather, land under ocean. See 310 Code Mass. Regs. §10.25(1) & (2). See also §10.25(3) & (4) (establishing standards for dredging for navigational purposes of land under ocean). However, a violation of §10.27(4)(c) occurred when the Town repaired, expanded, and lengthened the jetty sometime in the 1990s without including a sand bypass system as required by DEP performance standards. See 310 Code Mass. Regs. §10.01(1) (explaining that regula *120 tions are intended to ensure that coastal development is “built and maintained” in manner that protects coastal resources).
Further, in September of 2014, the Town conducted not only dredging but also coastal beach nourishment activities, and it plans to do so again in 2017. The applicable Order of Conditions for dredging Swan Pond River contains the following condition: “All dredge spoils shall be de-watered and/or transported to upland locations in excess of 100 feet of wetland resource areas or to a permitted beach nourishment project.” In addition, the Town obtained a separate Order of Conditions to deposit the dredge spoils on West Dennis Beach. The Town’s 10-Year Comprehensive Dredge Plan addresses dredging and beach nourishment in tandem. Thus, the Town is engaged in activities that trigger the application of the coastal beach regulations.
It appears that §10.27(4)(c) creates an ongoing obligation by the Town, after repairing and expanding the jetty, to offset its adverse effects on down drift beaches such as Miramar Beach. It is undisputed that the Town has not re-nourished Miramar Beach since 1996 and that Miramar Beach continues to suffer ongoing erosion from the presence of the jetty, exacerbated by the dredging of a large volume of sediment from Swan Pond River in 2010. Thus, it appears that the Town is violating §10.27(4)(c) by failing to periodically re-dredge the area of the jetty to provide beach nourishment to ensure that down drift beaches such as Miramar Beach are not starved of sediments.
The conundrum for this Court is that the Association insists that every time the Town dredges Swan Pond River for any purpose, such as navigation, the regulation requires it to deposit the spoils on Miramar Beach. This interpretation of §10.27(4) (c), which is not supported by its plain language, goes too far. The regulation does not purport to require that beaches down drift from a jetty receive priority in re-nourishment over all other coastal beaches.[2] Accordingly, the Association is not entitled to the specific relief it seeks: a declaration that any future dredging of Swan Pond River and depositing the spoils on an updrift beach instead of Miramar Beach violates 310 Code Mass. Regs. §10.27(4)(c) and a permanent injunction restraining the Town from performing any dredging of Swan Pond River unless the dredge spoils are deposited on Miramar Beach. Rather, the Association is entitled only to an order that the Town engage in periodic dredging of Swan Pond River to re-nourish Miramar Beach as required by 310 Code Mass. Regs. §10.27(4)(c).
The Town contends that such an order would violate DEP’s Chapter 91 Waterways regulations, which establish operational requirements for dredged material disposal. Section 9.40 of the regulations states that “in the case of a publicly-funded dredging project, such material shall be placed on publicly-owned eroding beaches; if no appropriate site can be located, private eroding beaches may be nourished if easements for public access below the existing high water mark can be secured by the applicant from the owner of the beach to be nourished.” 310 Code Mass. Regs. §9.40(4)(a). The Town argues that depositing the dredge spoils on Miramar Beach would violate this provision, given that there are Town-owned beaches such as West Dennis Beach that are eroding. However, it appears that permitting under the WPA is a prerequisite to permitting under Chapter 91. See 310 Code Mass. Regs. §9.1 l(3)(c)(3)(d) (completed application for a waterways license must include final Order of Conditions under WPA). Thus, in obtaining any Order of Conditions for future dredging of Swan Pond River, the Town can seek inclusion of the condition that the spoils be deposited on Miramar Beach in compliance with 310 Code Mass. Regs. §10.27(4)(c). Such a condition presumably would lead DEP to waive any violation of §9.40(4)(a). Cf. FMR Corp. v. Commissioner of Revenue, 441 Mass. 810, 819 (2004) (related statutes must be construed together as harmonious whole).
The Town further contends that an order to periodically re-nourish Miramar Beach with dredge spoils would violate the State Procurement Act. Chapter 30B, section 15(a) provides: “A governmental body shall dispose of a tangible supply, no longer useful to the governmental body but having resale or salvage value, in accordance with this section.” Section 15(b) provides: “The governmental body shall offer such supply through competitive sealed bids, public auction, or established markets.” In the view of this Court, dredge spoils that are needed to re-nourish Miramar Beach in accordance-with 310 Code Mass. Regs. §10.27(4)(c) do not constitute a supply that is no longer useful within the meaning of the Procurement Act.
In addition, the Town contends that an order to periodically re-nourish Miramar Beach with dredge spoils would violate the Anti-Aid Amendment to the Massachusetts Constitution by using public funds to benefit the Association’s private property. See Mass. Const. Art. 46, §2, as amended by art. 103 of the Amendments. The purpose of art. 46 is to prevent the transfer of appropriated funds to non-public institutions. Benevolent & Prot. Order of Elks Lodge. No. 65 v. Planning Bd. of Lawrence, 403 Mass. 531, 553 (1988). In determining whether an expenditure of public funds would violate the Anti-Aid Amendment, the court looks at whether the purpose of the expenditure is to aid a non-public institution, whether it does in fact substantially aid the non-public institution, and whether any such aid is politically or economically abusive or unfair. Helmes v. Commonwealth, 406 Mass. 873, 876-78 (1990). Public expenditures made for a public purpose do not violate the Anti-Aid Amendment simply because they also provide a benefit to private parties. See id. The purpose of an expenditure by the Town to dredge Swan Pond River and deposit the spoils on Miramar Beach is to *121 serve the public interest by maintaining the river as a navigable waterway, preventing foul odors and fish kills in Swan Pond, and complying with WPA regulations. Any incidental aid to the Association is not politically or economically abusive or unfair and does not cause the expenditure to run afoul of the Anti-Aid Amendment.[3]
The Town insists that an order to periodically re-nourish Miramar Beach with dredge spoils would violate the terms of the numerous permits and permissions granted by various State and Federal agencies that reviewed and approved the Town’s plan to perform maintenance dredging and deposit the spoils on West Dennis Beach. Moreover, the Town emphasizes that the deposit of spoils on Miramar Beach would require a new Order of Conditions from the Conservation Commission and possibly a Chapter 91 permit from DEP. However, as discussed supra, the Association is not entitled to injunctive relief prohibiting the Town from dredging Swan Pond River unless it deposits the spoils on Miramar Beach instead of West Dennis Beach. Rather, the Association only is entitled to an injunction requiring the Town to engage in periodic dredging of Swan Pond River to re-nourish Miramar Beach as required by 310 Code Mass. Regs. §10.27(4)(c). The Town may choose to modify any anticipated dredging to meet this obligation and seek the necessary amendments to existing permits, or may plan separate dredging in the future to re-nourish Miramar Beach and obtain the necessary permits.
Finally, the Town contends that the Association is not entitled to relief due to its failure to exhaust administrative remedies with respect to the deposit of dredge spoils on West Dennis Beach rather than Mir-amar Beach. It is well established that an aggrieved party cannot evade the need to timely appeal an administrative decision by seeking to recast its claim as one for declaratory or other judicial relief. Iodice v. Newton, 397 Mass. 329, 333-34 (1986); School Comm. of Franklin v. Commissioner of Educ., 395 Mass. 800, 807-08 (1985). The Town argues that the Association cannot now obtain an injunction because it failed to appeal any of the myriad permits the Town sought and received in connection with the dredging of Swan Pond River in 2010, which permits also authorized the 2014 dredging. See, e.g., Earthsource, Inc. v. Department of Envt’l. Prot., 2014 WL 5326510 at *1 (Mass.App.Ct. Rule 1:28) (plaintiffs who failed to timely appeal issuance of several environmental permits could not bring G.L.c. 214, §7A action alleging that environmental harm was occurring or about to occur from operation of waste incinerators under those permits). Cf. Conservation Comm’n of Falmouth v. Pacheco, 49 Mass.App.Ct. 737, 741 (2000) (failure to exhaust administrative remedies by appealing conservation commission decision to DEP precluded applicant from asserting commission’s lack of jurisdiction in Superior Court enforcement action); Bonfatti v. Zoning Bd. of App. of Holliston, 48 Mass.App.Ct. 46, 48-49 (1999) (failure to appeal Planning Board’s determination that subdivision had only two buildable lots precluded judicial review of issue in form of appeal from building inspector’s refusal to issue building permit for third lot).
Foremost, it is unclear from the summary judgment record whether the Association received notice of or participated in the various permitting proceedings in 2009 and 2010 that led to the issuance of the permits authorizing the 2010 and 2014 dredging.[4] Nor has the Town established that the Association was an aggrieved party entitled to pursue an administrative or judicial appeal of those permits under the relevant statutory schemes. Further, in the view of this Court, the failure to exhaust administrative remedies does not apply in the circumstances of this case where the ongoing environmental violation is not the depositing of dredge spoils on West Dennis Beach per se but rather, the Town’s failure to periodically re-nourish Miramar Beach as required by 310 Code Mass. Regs. §10.27(4)(c).
Thus, this Court concludes that the Association has proved that damage to the environment, the erosion of Miramar Beach, is occurring or is about to occur from the Town’s failure to periodically re-nourish the beach as required by 310 Code Mass. Regs. §10.27(4)(c). It is therefore entitled to declaratory and injunctive relief under G.L.c. 214, §7A.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Plaintiffs’ Motion For Summary Judgment be ALLOWED and that the Defendant Town of Dennis’ Cross Motion For Summary Judgment be DENIED. It is hereby ADJUDGED and DECLARED that the Town is obligated to periodically dredge Swan Pond River to re-nourish Miramar Beach pursuant to 310 Code Mass. Regs. §10.27(4)(c). It is further ORDERED that the Town of Dennis is PERMANENTLY ENJOINED from violating 310 Code Mass. Regs. §10.27(4)(c) and must comply with that regulation forthwith.

 The Association’s argument fails to recognize the significant public interest in nourishing eroding Town-owned beaches, as well as the Town’s authority and discretion in allocating its environmental protection efforts and financial resources.

 Moreover, the Anti-Aid Amendment permits appropriations to carry out legal obligations already entered into. See *122 Mass. Const. Art. 46, §2, as amended by art. 103 of the Amendments.

 In contrast, the record reveals that the Association was involved in the MEPA process with respect to the Town’s pursuit of approval for the 10-Year Comprehensive Dredge Plan. In October of 2015, LEC submitted comments to the Secretary of Energy and Environmental Affairs on behalf of the Association, asserting that the Town was required to deposit all dredge spoils on Miramar Beach under 310 Code Mass. Regs. §10.27(4)(c).